06-2735-ag, 06-3224-ag
*Biao Yang v. Gonzales, Ming Liang Lin v. Gonzales*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: June 1, 2007                                        Decided: July 31, 2007)

Docket Nos. 06-2735-ag, 06-3224-ag
(consolidated for disposition)

_____

BIAO YANG,

*Petitioner-Appellant,*

— v. —

ALBERTO GONZALES, UNITED STATES ATTORNEY GENERAL,

*Respondent-Appellee.*

_____

*consolidated for disposition with*

_____

MING LIANG LIN,

*Petitioner-Appellant,*

— v. —

ALBERTO GONZALES, UNITED STATES ATTORNEY GENERAL,

*Respondent-Appellee.*

_____

Before:
STRAUB, POOLER, and B.D. PARKER, *Circuit Judges.*

_____

Biao Yang and Ming Liang Lin, natives of China, petition for review of decisions of the Board of Immigration Appeals (BIA) affirming conclusions of Immigration Judges (IJs) that petitioners were not credible and had filed frivolous asylum applications. Petitions denied in part and granted in part; BIA's orders vacated in part and remanded.

_____

VLAD KUZMIN, Kuzmin & Associates, P.C., New York, New York, *for Petitioner-Appellant Biao Yang*.

DAVID L. HUBER, United States Attorney for the Western District of Kentucky, MONICA WHEATLEY, Assistant United States Attorney, Louisville, Kentucky, *for Respondent-Appellee Alberto Gonzales*.

_____

JOSHUA BARDAVID, Law Office of Jan Potemkin, New York, New York, *for Petitioner-Appellant Ming Liang Lin*.

PAUL I. PEREZ, United States Attorney for the Eastern District of Florida, KARIN B. HOPPMANN & LINDA JULIN MCNAMARA, Assistant United States Attorneys, Tampa, Florida., *for Respondent-Appellee United States Citizenship & Immigration Services*.

_____

*Per Curiam:*

Recently, the Board of Immigration Appeals ("BIA") set down standards for reviewing determinations that an applicant's asylum application was frivolous under section 208(d) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(d)(4), (6). *In re Y-L-*, 24 I. & N. Dec. 151, 155 (B.I.A. 2007). In the two cases currently before us, consolidated for disposition, the BIA upheld frivolousness determinations before the decision in *Y-L-* was rendered. We remand these cases in order to give the agency an opportunity, in the first instance, to reconsider its rulings in light of *Y-L-* and to further clarify the guidelines for review set forth in *Y-L-*.

Petitioner Biao Yang, a native and citizen of the People's Republic of China, applied for

asylum and withholding of removal under the INA, 8 U.S.C. §§ 1158, 1231(b)(3), and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85. In January 2005, Immigration Judge ("IJ") Paul A. DeFonzo denied Yang's application based on his findings that Yang's asylum application was time-barred, *see* 8 U.S.C. § 1158(a)(2)(B), and that Yang lacked credibility. The IJ also concluded that petitioner's application was frivolous under 8 U.S.C. §§ 1158(d)(4), (6). The decision was affirmed by the BIA on May 10, 2006, "except insofar as [the IJ] found that [Yang] had not established extraordinary circumstances for failing to meet the 1-year deadline for filing an asylum application." *In re Biao Yang*, No. A95 918 575 (B.I.A. May 10, 2006), *aff'g* No. A95 918 575 (Immig. Ct. N.Y. City Jan. 7, 2005).

Petitioner Ming Liang Lin, also a native and citizen of the People's Republic of China, applied for asylum, withholding of removal, and CAT relief in March 2001. In December 2004, IJ Noel Ferris denied Lin's claims on adverse credibility grounds. The IJ also concluded that petitioner's application was frivolous. Both of these determinations were affirmed, without opinion, by the BIA on June 12, 2006. *In re Ming Liang Lin*, No. A75 841 859 (B.I.A. June 12, 2006), *aff'g* No. A75 841 859 (Immig. Ct. N.Y. City Dec. 20, 2004).

Petitioners timely appealed the BIA decisions to this Court. Because the separate appeals involve common issues of law and fact, we consolidate the cases for disposition. We conclude that substantial evidence supports the credibility rulings; however, we vacate the findings of frivolousness and remand the cases in order to give the BIA the opportunity to interpret and apply the relevant statutes and regulations governing frivolousness under the standards the BIA

recently set forth in *Y-L-*, 24 I. & N. Dec. 151.

**I.      *Adverse Credibility Determinations***

In Yang's case, the BIA adopted and affirmed, then modified, the IJ's decision. In such circumstances, we review the IJ's decision minus the ground for denying relief that was rejected by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). Accordingly, we will address Yang's asylum claim as if it were not barred by the one-year filing deadline, as did the BIA. In cases such as Lin's where the BIA summarily affirms an IJ's decision without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), we review the reasoning and decision of the IJ directly, treating it as the final agency determination. *See Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006).

We owe "particular deference" to an IJ's credibility finding, "mindful that the law must entrust some official with responsibility to hear an applicant's asylum claim, and the IJ has the unique advantage among all officials involved in the process of having heard directly from the applicant." *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir. 2004), *overruled on other grounds by Shi Liang Lin v. U.S. Dep't of Justice*, Nos. 02-4611-ag, 02-4629-ag, 03-40837-ag, — F.3d —, 2007 WL 2032066 (2nd Cir. Jul 16, 2007) (*en banc*). Hence, our review of an IJ's credibility assessment is an "exceedingly narrow inquiry to ensure that the IJ's conclusions were not reached arbitrarily or capriciously . . . [and] that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Id*. at 74 (internal citations and quotation marks omitted).

We may, however, vacate and remand an adverse credibility determination if we find that

4

the IJ has failed to "act fairly in judging credibility and in assessing the sufficiency of the evidence," *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 394 (2d Cir. 2005), *e.g.*, where the IJ based the credibility ruling "upon speculation or upon an incorrect analysis of the testimony," *id*. at 400, or where the IJ unduly relied on inconsistencies that are "relatively minor and isolated and do not concern material facts," *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir. 2000) (internal citations omitted). Notwithstanding these types of errors, we may still affirm a credibility finding if we can confidently predict that "there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion." *Cao He Lin*, 428 F.3d at 401.

**A.     Biao Yang**

The IJ determined that Yang was not credible based on: (1) Yang's failure to mention at his airport interview that he was ever arrested or beaten; (2) inconsistencies in his testimony regarding the chronology of events; (3) an implausible and inconsistent account of how he escaped from detention; (4) the IJ's observation that Yang appeared to be "simply making up testimony when confronted by inconsistencies"; (5) contradictory and implausible testimony regarding his employment; and (6) contradictory evidence regarding when Yang decided to leave China. These findings, which are supported by the record, are more than sufficient to support an adverse credibility determination. Furthermore, Yang acknowledged making the inconsistent statements at the airport, and because there is no evidence of any coercion in the interview transcript – and Yang provided no other indication that the interview transcript was unreliable – the IJ properly relied on that transcript and rejected Yang's various explanations as inadequate. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 179-80 (2d Cir. 2004). Moreover, the IJ made

clear that his findings were based, in part, on Yang's demeanor, and we normally afford such findings particular deference. *See Zhou Yun Zhang*, 386 F.3d at 73. Accordingly, the adverse credibility finding underlying the denial of asylum and withholding of removal is upheld.

We note that while Yang's application included a request for CAT relief, the IJ did not address that request anywhere in his decision, nor did the BIA. Although we see little evidence in the record to support that claim, it is for the agency to make eligibility determinations in the first instance, *see INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002). Because, for the reasons set forth below, we remand this case to the agency, the agency should also address Yang's eligibility for CAT relief on remand.

**B.      Ming Liang Lin**

The IJ's adverse credibility determination in Lin's case is also supported by substantial evidence. The IJ based her determination on, *inter alia*, inconsistences in Lin's testimony and application regarding when he was baptized. Since Lin's claims of persecution are based on his practice of religion, his inconsistent testimony regarding when and how many times he had been baptized constitutes a substantial discrepancy. The IJ, therefore, properly relied on Lin's inconsistent testimony in support of her adverse credibility determination. *See Secaida-Rosales v. INS*, 331 F.3d 297, 308-09 (2d Cir. 2003) (to form the basis of an adverse credibility determination, a discrepancy must be "substantial" when measured against the record as a whole).

In addition, the IJ found that Lin had "no identity documents that [were] good and an ID card that [was], in fact, fraudulent." Submission of inconsistent statements as well as a fraudulent

6

document in support of an asylum application can constitute substantial evidence supporting an adverse credibility determination. *See Borovikova v. U.S. Dep't of Justice*, 435 F.3d 151, 156-57 (2d Cir. 2006); *In re O-D-*, 21 I. & N. Dec. 1079, 1083 (B.I.A. 1998) (determining that presentation of a false document in support of an asylum application can be fatal to the credibility of the applicant). Because the government's forensics report indicated that Lin's "Resident Identification Card" was a counterfeit, and Lin's only explanation was that it was bought from the public security office, the IJ reasonably concluded that this submission fatally undermined Lin's overall credibility. *Id*.; *id*.

The IJ also relied Lin's failure to call as witnesses his cousin – who was living in New Jersey – or members of his current parish in New York. An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 341 (2d Cir. 2006). Because Lin's testimony was not otherwise credible, the IJ properly relied on the lack of corroborative evidence. Moreover, here, the IJ warned Lin before his actual hearing that she (a) would give the letter attesting to his church membership no weight in the absence of a witness, and (b) would give his cousin's affidavit "no weight whatsoever."

In sum, the IJ's adverse credibility determination was supported by substantial evidence in light of the record as a whole. The factors that the IJ properly relied upon were central to Lin's claim of persecution. We note, however, that the IJ also relied on several factors that do not

7

support such a determination.[1] Nevertheless, reviewing the record as a whole, we can confidently predict that the IJ would reach the same decision on remand, even absent the grounds improperly relied upon. *See Xiao Ji Chen*, 471 F.3d at 338-39.

Because the IJ permissibly determined that Lin was not credible and therefore did not meet his burden of proof for asylum, and because Lin's withholding-of-removal claim also depends on the credibility of his testimony, it necessarily follows that denial of withholding of removal was also correct. *Zhou Yun Zhang*, 386 F.3d at 71. Moreover, the IJ properly concluded that Lin had "utterly failed to make out a claim under the Convention Against Torture for illegal departure," because Lin admitted that he had not departed China illegally, and there is no evidence in the record tending to show that Lin would be subject to torture upon his return to China.

## II. Frivolousness Determinations

Having concluded that the IJs' credibility rulings were supported by substantial evidence, we turn to their frivolousness determinations. Section 208(d) of the INA, 8 U.S.C. § 1158(d), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

---

[1]For example, the IJ erred in: (1) relying on Lin's infrequent attendance at church to discredit him without considering his testimony that he did not usually have Sundays off and attended whenever he did have time off; (2) relying on Lin's testimony that he was baptized in an official church to find that such a baptism would not have triggered persecution, ignoring Lin's testimony that he was persecuted not for being baptized but rather for attending an underground church; (3) finding an inconsistency between a statement in Lin's application that he was targeted for preaching and church attendance while ignoring his explanation that he thought asking people to go to church was preaching, *see Cao He Lin*, 428 F.3d at 403; (4) relying on the vagueness of Lin's testimony concerning his religion and time in prison without probing for details, *see Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 152 (2d Cir. 2003), *overruled on other grounds by Shi Liang Lin*, 2007 WL 2032066; and (5) stating that Lin offered different explanations for a discrepancy between his household registry and a letter during cross-examination and in his affidavit.

8

("IIRIRA"), provides, in relevant part:

> (d) Asylum procedure
>
> . . .
>
> (4) Notice of privilege of counsel and consequences of frivolous application
> At the time of filing an application for asylum, the Attorney General shall . . . advise the alien of the privilege of being represented by counsel and of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum
>
> . . .
>
> (6) Frivolous applications
> If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application.

8 U.S.C. §§ 1158(d)(4), (6). Thus, a final decision that an asylum application is frivolous permanently forecloses the petitioner from all benefits under the immigration laws of this country.[2]

Because of the severe consequences of a finding of frivolousness under 8 U.S.C. § 1158(d)(6), *see Y-L-*, 24 I. & N. Dec. at 155, the corresponding federal regulations prescribe the parameters within which an IJ and the BIA must operate in making these determinations:

> For applications filed on or after April 1, 1997, an applicant is subject to the provisions of section 208(d)(6) of the Act only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum application. For purposes of this section, an asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

---

[2] The alien may still be eligible for withholding of removal where a deportation would result in dire persecutions. *See* 8 C.F.R. § 208.20.

8 C.F.R. § 208.20.

In *Yuanliang Liu v. U.S. Dep't of Justice*, 455 F.3d 106 (2d Cir. 2006), we considered a petition for review of the BIA's affirmance of a frivolousness finding. After surveying all of the relevant caselaw, we remanded the case to the BIA so that it could, "in the first instance, set down clear and explicit standards by which frivolousness decisions may be judged. In doing so, we encourage[d] the BIA to consider not only the relevant statutes and regulations, but also the principles articulated by our sister circuits. . . ." *Id*. at 116.

On remand, the BIA, in vacating the IJ's frivolousness finding, set forth the following procedural safeguards which must be followed by immigration judges in rendering frivolousness determinations:

> (1) notice to the alien of the consequences of filing a frivolous application; (2) a specific finding by the Immigration Judge or the Board that the alien knowingly filed a frivolous application; (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated; and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

*Y-L-*, 24 I. & N. Dec. at 155.

The first provision "require[s] that the Attorney General advise the alien at the time of filing an asylum application of the consequences of filing a frivolous application, i.e., permanent ineligibility for any benefits under the Immigration and Nationality Act except for withholding of removal." *Id*. (citing § 208(d)(6); 8 C.F.R. § 1208.20).[3]

---

[3]The BIA noted in *Y-L-* that the Form I-589, which is the asylum application, "contains a written warning that '[a]pplicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act.'" 24 I. & N. Dec. at 155. However, the BIA did not opine on whether this notice alone would suffice under the notice requirement. *Id*.

The second provision requires that "the Immigration Judge separately address and include specific findings that the respondent deliberately fabricated material elements of his asylum claim." *Id*. at 157. "An element of a claim is 'fabricated' when it misrepresents the truth. . . . A 'deliberate' fabrication involves a knowing and intentional misrepresentation of the truth." *Id*. at 156 (internal citations omitted). "Therefore, an Immigration Judge's specific finding that a respondent deliberately fabricated a material element of his asylum claim constitutes a finding that he knowingly filed a frivolous asylum application." *Id*.

In laying out standards for the third provision, the BIA rejected our suggestion in *Liu* that "concrete and conclusive evidence of fabrication" be required to support a frivolousness finding. *Id*. at 158. Instead, the BIA articulated the following requirement:

> After taking into account the respondent's explanations for discrepancies or implausible aspects of the claim, . . . the Immigration Judge must provide cogent and convincing reasons for finding by a preponderance of the evidence that an asylum applicant knowingly and deliberately fabricated material elements of the claim.

*Id*.

Finally, with respect to the fourth requirement, an opportunity to account for discrepancies, the BIA, in one section of its opinion, suggests that immigration judges should, as a matter of "good practice," inform applicants that they are considering a frivolousness determination. *Id*. at 159-60 ("In order to afford a sufficient opportunity to account for discrepancies, it would be a good practice for an Immigration Judge who believes that an applicant may have submitted a frivolous asylum application to bring this concern to the attention of the applicant prior to the conclusion of proceedings."). Later in its opinion, however, the BIA appears to *require* such an action in cases where it would not be obvious to an applicant

11

that such a finding was being considered. *See id.* at 160 ("In the case before us, the Immigration Judge did not mention during the course of the hearing that she was contemplating a frivolousness finding. We do not find that the particular concerns underlying the frivolousness finding were such that the respondent should necessarily have anticipated such a finding and provided explanations relevant to the question whether he deliberately fabricated the account of the forced abortion and illegal adoption in the second application.").[4] Ultimately, the BIA found that the IJ had failed to take into account the applicant's explanations for the inconsistencies and thus failed to meet the fourth requirement for making frivolousness determinations.

### A.     Biao Yang

Although the IJ in Yang's case rendered his decision long before the BIA handed down its decision in *Y-L-*, the IJ unquestionably complied with at least some of the procedural safeguards articulated in *Y-L-*. First, the IJ, on at least two occasions, once at a Master Calendar hearing and then again at the Individual Hearing, provided Yang with notice of the consequences of filing a frivolous application. Moreover, the IJ, during the course of the hearing, informed Yang that he was considering a frivolousness finding.[5]

---

[4]Given the dramatic nature of the petitioner's inconsistencies in *Y-L-* (he first claimed that his wife gave birth to a second child and subsequently claimed that the couple illegally adopted the second child after his wife had been forcibly aborted), it is possible to conclude that the BIA intended to require an IJ to specifically warn an applicant that he or she is contemplating a frivolousness finding in most circumstances and not just with respect to inconsistencies that are not obvious.

[5]However, the IJ gave these warnings near the end of the hearing and only with respect to the inconsistency regarding where the petitioner went after he escaped from the governmental authorities. It is not clear whether such warnings were sufficient under the requirement articulated in *Y-L-*, if such a requirement exists, to warn petitioners that a frivolousness finding is being contemplated.

More problematic in Yang's case, however, is the requirement that the IJ "separately address and include specific findings that the respondent deliberately fabricated material elements of his asylum claim." *Id*. at 157. While the IJ exhaustively laid out his reasons for making an adverse credibility determination, with regards to the frivolousness finding, the IJ stated only:

> Notwithstanding the representations of the [applicant] regarding his understanding of the nature and gravity of the warnings concerning frivolous asylum applications, it is clear to the Court that [Yang] has submitted a clearly fabricated application for asylum.
>
> The Court comes to this conclusion based not only on the multiple inconsistencies uttered by the [applicant] regarding the narrative leading up to and from his alleged confrontation with family planning officials on May 20th, 2002, but also from the rank inconsistency between [Yang]'s application for relief and the statements made by him to officers of the immigration service at the Chicago International airport.
>
> The Court finds that the asylum application has been fabricated and will apply the lifetime bar to future immigration benefits pursuant to INA Section 208(d)(6).

Because the IJ in *Y-L-* "separately addressed the question of frivolousness" and made separate factual findings with respect to that determination, *id*. at 156, the BIA held that her findings met the regulatory requirements without explicitly defining what it means to "separately address and include specific findings" regarding fabrication. *See id*. at 157. In Yang's case, although the IJ did separately address the frivolousness determination, he did not make specific factual findings supporting that determination, except to arguably incorporate by reference findings he already made in the context of the adverse credibility determination. In addition, while the IJ considered Yang's explanations for the inconsistencies and discrepancies when making his adverse credibility determination, he did not separately consider them when making his frivolousness

determination. It is unclear whether the IJ's actions were sufficient under *Y-L-*.

Moreover, the IJ never explicitly stated that the fabrications were "deliberate," or that the fabrications were "material" to Yang's asylum claim. *Id*. at 157. The IJ, while laying out the factual findings to support an adverse credibility determination, certainly made comments which could lead to the inference that the fabrications were "deliberate" and "material" (*e.g.*, "[it] would appear that [Yang] is simply making up testimony when confronted by inconsistencies," "I am not convinced that [Yang] has provided any credible testimony which would allow the Court to determine what subjective fear, if any, [Yang] actually has of returning to China"); however, the IJ never specifically made such findings. *Y-L-*, by contrast, appears to specifically require an IJ to find that an asylum applicant "deliberately fabricated material elements of his asylum claim." *Id*.[6]

**B.      Ming Liang Lin**[7]

---

[6]Moreover, although the BIA concluded that the IJ's frivolousness finding was not "clearly erroneous," because this decision was made before the BIA's decision in *Y-L-* was handed down, it is unclear whether the BIA held the IJ in Yang's case to the preponderance of the evidence standard articulated in *Y-L-*. 24 I. & N. Dec. at 158.

[7]The government argues, as an initial matter, that Lin has abandoned his challenge to the frivolousness finding because he did not raise the issue in his opening brief to this Court. However, we find that Lin at least arguably raised the frivolousness issue in his opening brief ("[a]dditionally, the IJ found that Mr. Lin submitted a fraudulent application, and barred him for [sic] ever receiving any benefits under the INA"). He then went on to attack the negative credibility determination upon which the frivolousness finding was based. Moreover, even if we determined that Lin had not squarely raised the frivolousness issue, the challenge would not be deemed waived because "[t]his Court has ample discretion to excuse an appellant's failure to argue an issue in his opening brief." *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004); *see also id*. at 164 ("Although we ordinarily will not consider arguments that an appellant has failed to make in his opening brief, this principle is designed to promote the orderly briefing, argument, and consideration of appeals, and does not affect appellate jurisdiction.") (internal citations omitted). We are especially inclined to exercise that discretion here, given the harsh

14

In determining that Lin had filed a frivolous asylum application, the IJ reasoned:

> I do not believe [Lin] has been truthful. He has filed documents that he made representations that were genuine or that he believed to be genuine. He has not come up with any plausible reasons why he would have believe[d] them to be genuine when they turned out not to be. He has not bothered to get evidence from third parties that they procured these documents for him and he was an innocent bystander, if you will. And I believe that his lies alone should sustain a finding that this is a frivolous application. Despite the fact that the Board has still failed to issue any precedent decision as to exactly what they think that means. Congress said that frivolous applications will be punished with a lifetime bar. An untruthful application is by definition, frivolous. Therefore, I believe the lifetime bar should apply in this case.

The IJ's frivolousness determination as to Lin arguably more clearly violates the standards set forth in *Y-L-*. Although the IJ gave Lin notice of the consequences of filing a frivolous application and made separate, albeit sparse, factual findings to support that determination, the IJ did not find that the inconsistencies or discrepancies were "deliberate" or "material," and the IJ did not inform the petitioner that she was considering a frivolousness finding during the course of the proceedings. Moreover, the IJ's statements – *e.g.*, "[a]n untruthful application is by definition, frivolous" – reveal an erroneous understanding of the legal principles underlying frivolousness determinations. *See Y-L-*, 24 I. & N. at 156 ("[A] finding of frivolousness does not flow automatically from an adverse credibility determination.") (internal quotations marks omitted). It is therefore not evident that the IJ's frivolousness finding in Lin's case comports with the requirements set forth in *Y-L-*.

**C. Remand**

In light of the ambiguities in the statute and regulations, and in light of the fact that some of these ambiguities remain even after *Y-L-*, we believe that the most prudent course of action is

---

consequences attached to frivolousness findings.

to remand these cases for the BIA to interpret and apply the standards it set forth in *Y-L-* in the first instance.[8]

In remanding the *Liu* case to the BIA, we noted, "[b]ecause we conclude, as a matter of *discretion*, that it is prudent and useful for us to remand the issue of frivolousness, we need not address the more complicated question of when remands to the BIA are *required* by elementary principles of administrative law." 455 F. 3d at 116 (citing *Gonzales v. Thomas*, 547 U.S. 183 (2006) (per curiam)). We went on to set forth six reasons for why the case should be remanded as a matter of discretion: (1) "neither the IJ, who made her frivolousness determination in the course of a few short paragraphs, nor the BIA, which summarily affirmed the IJ's decision, considered seriously the difficult issues and questions of first impression that this appeal presents"; (2) the case presented "a real opportunity for the BIA to take the lead in the establishment of uniform national standards for deciding when a finding of frivolousness is appropriate"; (3) "[t]here is language in the relevant statute, 8 U.S.C. § 1158(d), and in the corresponding regulation, 8 C.F.R. § 208.20, that arguably require[d] interpretation and clarification"; (4) "[o]ur circuit ha[d] literally no case law on this subject"; (5) "virtually every asylum case that contains an adverse credibility ruling has the potential of giving rise to a finding of frivolousness"; and (6) "[a] finding of frivolousness is a potential 'death sentence' for an alien's *immigration* prospects." *Id.* at 116-17. For these same reasons, we believe remand to the BIA – so that it can further interpret

---

[8]We note that in remanding these cases to the BIA, we do not opine on the reasonableness of the agency's interpretations of the frivolousness statute in *Y-L-*, a question which is not before us now. Such a review would, in any event, prove difficult given the ambiguities that remain in the BIA's interpretations of the statute (for example the separate findings requirement), as discussed above.

and apply the standards it set forth in *Y-L-* – to be the most prudent course of action in the present cases.

On remand, the BIA should consider, *inter alia*, the following issues: (1) to what extent the IJ is required to set out his or her factual findings to support a frivolousness determination separately from the adverse credibility determination and to what extent he or she is permitted to incorporate by reference the findings made to support an adverse credibility determination; (2) to what extent the IJ is required to consider the applicant's explanations for any discrepancies separately from the adverse credibility determination; (3) to what extent the IJ is required to explicitly find that the fabrications at issue were "deliberate" or "material"; and (4) to what extent the IJ is required, if at all, to inform the applicant during the course of the proceedings that he or she is considering a frivolousness determination before he or she renders such a determination.[9]

## CONCLUSION

For the foregoing reasons, we DENY the petitions for review with respect to the IJs' adverse credibility rulings, GRANT the petitions for review with respect to the frivolousness determinations, VACATE the frivolousness determinations, REMAND the cases to the BIA for further proceedings consistent with this opinion, and GRANT stays of removal pending a decision from the BIA on remand.

---

[9]The BIA should further decide whether a general warning given at the beginning of a hearing (*i.e.*, prior to petitioner's testimony or identification of any inconsistencies) regarding the consequences of filing a frivolousness application in order to satisfy the notice requirement also satisfies any such "warning" requirement.