Yassa Reglant SOLIMAN–SALAMA, Petitioner,

v.

Michael B. MUKASEY, Attorney General of the United States,[1] Respondent.

No. 03–4344–ag.

United States Court of Appeals, Second Circuit.

Jan. 30, 2008.

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as respondent.

Yassa Reglant Soliman–Salama, Ridge-wood, New York, pro se.

Peter D. Keisler, Assistant Attorney General, Civil Division, Linda S. Wernery, Assistant Director, Daniel G. Lonergan, Trial Attorney, Civil Division, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

PRESENT: JON O. NEWMAN, JOSÉ A. CABRANES, DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Petitioner Yassa Soliman–Salama, a native and citizen of Egypt, seeks review of a January 31, 2003 order of the BIA affirming the November 30, 2001 decision of the Immigration Judge ("IJ") Roxanne C. Hladylowicz, denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Yassa Reglant Soliman–Salama,* No. A79 083 940 (B.I.A. Jan. 31, 2003), *aff'g* No. A79 083 940 (Immig. Ct. N.Y. City November 30, 2001). We as-

sume the parties' familiarity with the underlying facts and procedural history in this case.

When the BIA summarily affirms the decision of the IJ without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision as the final agency determination, *see, e.g., Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Tao Jiang v. Gonzales,* 500 F.3d 137, 140 (2d Cir.2007). In this case, the IJ's adverse credibility determination was supported by substantial evidence.

■ In *Jin Chen v. U.S. Dep't. of Justice,* 426 F.3d 104, 114 (2d Cir.2005), we held that "where testimony is 'spare' yet specific and detailed enough to support the essential elements of an applicant's claim, the IJ or the [Government] may fairly wonder whether the testimony is fabricated, and the IJ and counsel for the [Government] may wish to probe for incidental details, seeking to draw out inconsistencies that would support a finding of lack of credibility." 426 F.3d at 114 (internal quotations and citations omitted). But *Jin Chen* neither obliges the IJ to extract from the asylum applicant all details about certain incidents that the IJ deems to be critical to the petition for asylum nor does it command the IJ to warn the asylum applicant that his answers may not be

specific enough in order to establish the credibility of his proffered account. Instead, *Jin Chen* merely reminds the IJ that a "spare" record, when viewed on its own, is unlikely to be a record sufficient to support an adverse credibility determination. When confronted with a seemingly unresponsive witness, it is thus the IJ's responsibility to attempt to "draw out inconsistencies" rather than to simply assume that those inconsistencies must exist on the basis of the asylum seeker's unwillingness or inability to be more descriptive in his testimony. The IJ clearly drew out inconsistencies in Soliman–Salama's account as required by *Jin Chen* sufficient to make an adverse credibility determination.

While there are several instances of inconsistent, or potentially inconsistent, statements by Soliman–Salama in the record, one example is particularly illustrative. A critical aspect of Soliman–Salama's account is his claim that his incarceration in Ecuador was the result of being framed for theft by a group of six Muslims who resented his religious beliefs. **[***See* **Trans. at 130–39]** According to Soliman–Salama, this Muslim group stole his passport and then told Ecuadorian authorities that he owed an $850 hotel bill charged to someone named "Mario Asadi." **[***Id.* **at 132–39]** This led to an exchange between the IJ and Soliman–Salama, in which the IJ uncovered a fundamental inconsistency in Soliman–Salama's testimony—namely, if the Ecuadorian authorities truly believed Soliman–Salama to be Mario Asadi, why was he not imprisoned under that name?[2]

---

**2.** The exchange in question transpired as follows:

[IJ]: My question still is, what are you doing with a hotel bill under that name [Mario Asadi]?

[Soliman–Salama]: I am doing with it anything. With this document I entered the prison, and with this document I entered the prison with the name of Mario Asadi.

[IJ]: Are you suggesting that you were imprisoned under the name Mario Asadi?

[Soliman–Salama]: This thing is what I do not understand either, how they take to prison a person called Yasse with a document with Mario Asadi. That's what I do not understand.

[IJ]: Were you imprisoned under the name Mario Asadi? Yes or no. Simple question.

This is merely one of many important inconsistencies in the record that lend support for the IJ's adverse credibility finding.[3]

Given these inconsistencies clearly established in the record, the IJ was well within her discretion in concluding that the testimony of Soliman–Salama was not credible. *See Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 337–38 (2d Cir. 2006).

The IJ did, however, make some errors with respect to the adverse credibility determination. For example, in the opinion, the IJ stated that "[t]he statements that the respondent made with respect to his problems in Egypt are to be considered without merit, because the respondent has been deemed not credible, not plausible, and has simply been unable to articulate the nature of these incidences that he claims happened, when they happened, how they happened. There is no specificity whatsoever, and therefore the Court cannot make a positive credibility finding with respect to any difficulties the respondent claims that he had in Egypt." [Trans., at 63] As we have previously concluded, the IJ was within her discretion to hold that Soliman–Salama's account was

not credible. However, to the extent that the IJ determined Soliman–Salama to be not credible for lack of specificity regarding the assaults he suffered in Egypt, the IJ was in error.

■ The IJ also may have improperly jumped to conclusions about the validity of some of the evidence submitted on behalf of Soliman–Salama. The IJ observed that none of Soliman–Salama's documents from Ecuador were officially authenticated, and she described as "suspect" the document from the Supreme Court of Guyaquil stating that Soliman–Salama has no basis for applying for Ecuadorian citizenship, notwithstanding his marriage to an Ecuadorian citizen. [Trans., at 63] This assessment appears to be based on the appearance of the document and the IJ's own intuition. *Id.* However, without some specific evidence concerning the practices of Ecuadorian courts, the IJ's conclusion here is speculative. See *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 405 (2d Cir.2005).

Despite these apparent errors, "[i]t suffices for us to hold in this case that (1) substantial evidence in the record relied on by the IJ, considered in the aggregate,

---

[Soliman–Salama]: No.
. . .
[Soliman–Salama]: I entered the prison with the accusation of Mario, but in my name.
[IJ]: Oh, I see. You entered the prison under your real name, as using the alias Mario Asadi. Is that correct, sir? I'm still trying to understand.
[Soliman–Salama]: No, I entered to the prison in my name.
**Trans. at 138–39.**

3. For instance, Soliman–Salama claimed that his passport was stolen on March 25, 2000 [**Trans. at 130**], but the notarized copy of his passport that he presented to the IJ was stamped July 5, 2000. Confronted with this discrepancy, Soliman–Salama acknowledged that the notary had not seen the original copy of Soliman–Salama's passport, but main-

tained that the notary's stamp—indicating that he had indeed seen the original—was nonetheless correct. *Id.,* at 163–64. Furthermore, when the IJ inspected the passport, she noticed some stamps indicating that Soliman–Salama had exited and reentered Ecuador. When asked to explain, Soliman–Salama conceded that the stamps had been forged in order to make it appear that he was residing in Ecuador legally. *Id.,* at 192–94. There was some confusion about the exact nature of the carpentry work Soliman–Salama was able to perform shortly after he was allegedly severely assaulted on the basis of his religious beliefs in June of 1997, *see id.,* at 159–61, and the dates when Soliman–Salama received medical treatment for his injuries, *see id.* at 148–51.

supports the IJ's finding that petitioner lacked credibility, and (2) disregarding those aspects of the IJ's reasoning that are tainted by error, we can state with confidence that the same decision would be made were the petition remanded." *Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 338–39 (2d Cir.2006). For these reasons, we affirm the IJ's decision to deny Soliman–Salama's application for asylum on the basis of an adverse credibility finding.

■ However, Soliman–Salama's petition should be granted in part and remanded for further proceedings with respect to the IJ's determination that his asylum application was frivolous.

In ruling that Soliman–Salama's application for asylum was frivolous, the IJ simply stated that "[t]he respondent has been deemed not credible and not plausible, and his application for asylum has been deemed frivolous." [Trans. at 65]

This Court, along with the BIA, has recently considered the proper standard that ought to govern our review of an IJ's decision to deem a particular asylum application frivolous pursuant to the criteria set forth in 8 C.F.R. § 208.20. *See Biao Yang v. Gonzales,* 496 F.3d 268 (2d Cir.2007); *Yuanliang Liu v. Dep't of Justice,* 455 F.3d 106, 113 (2d Cir.2006). While the BIA has yet to articulate a totally clear framework,[4] it seems certain that the IJ in this instance did not do enough to distinguish her adverse credibility determination from her ruling that Soliman–Salama's asylum application was frivolous. Even as a more precise doctrinal scheme remains to be adopted, the language of 8 C.F.R. § 208.20 itself ought to be sufficient as the IJ in this case failed to show that Soliman–Salama's asylum application ought to be regarded as frivolous because she did not specifically determine which evidence Soliman–Salama "deliberately fabricated" and whether that evidence was material to his asylum application. Thus, this issue should be remanded to the IJ for further consideration.

■ Finally, in her order, the IJ stated that Soliman–Salama should be removed to either Egypt or Ecuador. [Trans., at 63] The IJ believed that Soliman–Salama, due to his marriage to an Ecuadorian citizen, was free to reside in Ecuador if he so

4. On remand in *Yuanliang Liu,* the BIA advanced a comprehensive framework for determining whether an asylum application is frivolous. This framework included the following requirements: (1) notice to the alien of the consequences of filing a frivolous application; (2) a specific finding by the Immigration Judge or the Board that the alien knowingly filed a frivolous application; (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated; and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim. *In re Y–L–,* 24 I. & N. Dec. 151, 155 (B.I.A.2007). However, in *Biao Yang,* we remanded this issue back to the BIA for further clarification about how this proposed framework ought to be applied.

In particular, the BIA was asked to consider the following issues:(1) to what extent the IJ is required to set out his or her factual findings to support a frivolousness determination separately from the adverse credibility determination and to what extent he or she is permitted to incorporate by reference the findings made to support an adverse credibility determination; (2) to what extent the IJ is required to consider the applicant's explanations for any discrepancies separately from the adverse credibility determination; (3) to what extent the IJ is required to explicitly find that the fabrications at issue were "deliberate" or "material"; and (4) to what extent the IJ is required, if at all, to inform the applicant during the course of the proceedings that he or she is considering a frivolousness determination before he or she renders such a determination.
*Biao Yang,* 496 F.3d at 279.

desired despite the evidence that Soliman–Salama presented to the contrary. **[Trans. at 64]** On remand, it would be helpful for the BIA to consider whether Ecuador actually is indeed a feasible country for removal in this case.

For the foregoing reasons, the petition for review is GRANTED IN PART, in so far as the IJ failed to establish sufficiently that Soliman–Salama's application for asylum was frivolous, and DENIED IN PART, in so far as the IJ was within her discretion in making her adverse credibility determination. The order of the BIA is REVERSED in so far as it held Soliman–Salama's application was frivolous, and the case is REMANDED to the BIA for further proceedings consistent with this order. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).