Gurung v. Sessions

BIA
Vomacka, IJ
A201 110 210

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand seventeen.

PRESENT:
        JOHN M. WALKER, JR.,
        REENA RAGGI,
        CHRISTOPHER F. DRONEY,
         *Circuit Judges.*

_____

BIKASH GURUNG,
      *Petitioner,*

      v.                        **16-511**
                                      **NAC**

JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,
      *Respondent.*

_____

FOR PETITIONER:        Stuart Altman, Law Office of Stuart Altman, New York, N.Y.

FOR RESPONDENT:       Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Yanal H. Yousef, Trial Attorney, Office of Immigration

Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Bikash Gurung, a native and citizen of Nepal, seeks review of a January 27, 2016, decision of the BIA affirming an August 21, 2014, decision of an Immigration Judge ("IJ") denying Gurung's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Bikash Gurung,* No. A201 110 210 (B.I.A. Jan. 27, 2016), *aff'g* No. A201 110 210 (Immig. Ct. N.Y. City Aug. 21, 2014). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed both the BIA's and IJ's decisions. *See Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165-66 (2d Cir. 2008).

2

The governing REAL ID Act credibility standard provides that the agency must "[c]onsider[] the totality of the circumstances," and may base a credibility finding on an applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his or his witness's statements, "without regard to whether" they go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 163-64. "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. Further, "[a] petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (internal quotations marks omitted). For the reasons that follow, we conclude that substantial evidence supports the agency's determination that Gurung was not credible.

First, the agency did not err by relying on Gurung's credible fear interview record. We have held that a credible

3

fear interview warrants "close examination" because it may "be perceived as coercive" by the alien or fail to "elicit all of the details supporting an asylum claim." *Ming Zhang v. Holder*, 585 F.3d 715, 724 (2d Cir. 2009). Nevertheless, "[w]here the record of a credible fear interview displays the hallmarks of reliability, it appropriately can be considered in assessing an alien's credibility." *Id*. at 725. Some of those hallmarks are that the interview was memorialized in a typewritten document, was conducted through an interpreter, and asked questions designed to elicit a possible asylum claim. *Id.* The agency correctly observed that those hallmarks were present here. A Nepalese interpreter was used. The interviewer asked questions designed to elicit an asylum and CAT claim (e.g., why Gurung left Nepal, why he feared the Maoists, whether he was ever physically harmed, and whether he feared anyone in the Nepalese government or anyone acting with the consent of a public official). The questions and answers were memorialized in a typewritten document. And at no point did Gurung demonstrate difficulty answering the interviewer's questions. Although Gurung contends that his interview record is unreliable because he was scared, we have repeatedly "reject[ed] the notion that a petitioner's claim

4

that []he was nervous and distracted during the credible fear interview automatically undermines or negates its reliability as a source of h[is] statements." *Id*. Because the record of the interview is reliable, the agency was entitled to consider it in assessing Gurung's credibility.

Second, the agency reasonably relied on the inconsistencies among Gurung's credible fear interview statements, testimony, and asylum application about whether he was kidnapped in Kathmandu in 2010. *See Xiu Xia Lin*, 534 F.3d at 163-64, 166 n.3. Gurung stated during his credible fear interview that there was no real incident after the April 2008 attack; he also responded only that the Maoists threatened his parents when asked if he had any problems in Kathmandu. However, Gurung provided in his asylum application and testimony that he was kidnapped by Maoists from a hotel in Kathmandu in 2010, transported by van to a safe house 45 minutes away, beaten with rods and kicked in his face, and later woke up in the hospital. When confronted with these discrepancies, Gurung responded that he could not tell his full story during the interview because he was anxious and fearful. The IJ was not compelled to accept this explanation because Gurung gave detailed answers about the

other incidents with the Maoists during his interview and this was the most serious incident. *See Majidi*, 430 F.3d at 80.

Third, the agency reasonably relied on the inconsistency between Gurung's credible fear interview statements and testimony about whether he was threatened during the April 2008 attack. *See Xiu Xia Lin*, 534 F.3d at 163-64. Gurung was asked during his credible fear interview whether his attackers said anything while they were beating him, and he responded: "[t]hey didn't say a thing[,] all of a sudden they came and attacked me." Certified Administrative Record ("CAR") at 294. Gurung testified, however, that his attackers told him that they were "going to kill [him] right here." *Id*. at 106. When asked about this discrepancy, Gurung explained that he could not tell the whole story during his interview and was not in his right mind at the time because he was in a jail. The IJ reasonably rejected this explanation because Gurung gave detailed answers throughout the interview and did not indicate that he had trouble answering the questions. *See Majidi*, 430 F.3d at 80.

Fourth, the agency reasonably relied on Gurung's testimonial inconsistencies regarding how his father obtained

6

the medical records that he submitted to the IJ. *See Xiu Xia Lin*, 534 F.3d at 163-64. Gurung testified that he asked his father for the medical records when he was preparing his application and that his father subsequently obtained them from the clinic where Gurung was treated. However, after the government attorney expressed confusion as to why the records contained receipts and medication prescriptions, which one might expect to find in hospital discharge papers but not copies of medical records obtained years' later, Gurung changed his testimony and stated that his father sent the records from his home in Nepal and that there were no records that his father needed to obtain from the clinic. When asked about this discrepancy, Gurung explained that he meant that this father brought the records with him from the medical facilities and that he did not understand the earlier question. The IJ was not compelled to accept this explanation because it was inconsistent with Gurung's prior testimony and did not resolve the inconsistency. *See Majidi*, 430 F.3d at 80.

Fifth, the agency reasonably relied on the inconsistencies between Gurung's credible fear interview statements and testimony regarding why he failed to report

7

any incident with the Maoists to the Nepalese police. During his credible fear interview, Gurung stated that it was "[b]ecause [he] was a worker of the party and [he] didn't seek help from the[] [police]" and that "[he] did not go to seek out the protection of the police because [he] was involved with the party matters." CAR at 296. At his hearing, however, Gurung testified that he did not report the attacks to the police because the Maoists "would [have] target[ed] [him] more" and there would have been "more danger to [his] life." *Id*. at 109-10, 114. When asked to explain the discrepancy, Gurung responded that he did not tell the full story during his interview and he was not aware of what was going on. The IJ was not required to credit this explanation, which did not compellingly resolve the inconsistency. *See Majidi*, 430 F.3d at 80.

Finally, we reject Gurung's argument that the IJ ignored his corroborating letters from his father and friends and documents that support his political party membership. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) (An applicant's failure to corroborate testimony may bear on credibility, either because the absence of particular evidence is viewed as suspicious, or "because the absence of

8

corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question."). The agency need not "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner," *Wei Guang Wang v. Bd. of Immigration Appeals*, 437 F.3d 270, 275 (2d Cir. 2006) (internal quotation marks omitted), and "we presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise," *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 337 n.17 (2d Cir. 2006). Nevertheless, "[w]e also require some indication that the IJ considered material evidence supporting a petitioner's claim." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005). Here, while the IJ did not make a particular determination as to the weight of every piece of Gurung's corroborating evidence, the IJ stated that he considered Gurung's evidence, observed that the letters were from interested witnesses not subject to cross examination, and concluded that Gurung did not provide sufficient corroboration to rehabilitate his credibility. Gurung does not address these conclusions, which were reasonable, and the record contains sufficient indication that the IJ considered

9

Gurung's corroborating evidence. *See In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 215 (B.I.A. 2010) (giving diminished weight to letters from relatives because they were from interested witnesses not subject to cross-examination), *rev'd on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012); *Xiao Ji Chen*, 471 F.3d at 337 n.17, 342 (observing that the weight accorded to an applicant's documentary evidence lies largely within the discretion of the agency).

Given the foregoing inconsistencies among Gurung's testimony, asylum application, and credible fear interview statements, the totality of the circumstances supports the credibility ruling. *Xiu Xia Lin*, 534 F.3d at 165-66. A reasonable adjudicator would not be compelled to conclude otherwise. *Id.* at 167. And, despite Gurung's protests otherwise, the credibility finding is dispositive of asylum, withholding of removal, *and* CAT relief because all three claims are based on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition

is DISMISSED as moot.  Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk