Zafar v. Bondi

BIA
Douchy, IJ
A209 171 298

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of November, two thousand twenty-five.

PRESENT:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> BETH ROBINSON,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

MUHAMMAD BILAL ZAFAR,
> *Petitioner,*

> v.

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

23-6312
NAC

**FOR PETITIONER:**          Michael Z. Goldman, New York, NY.

**FOR RESPONDENT:**          Brian Boynton, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Timothy Bo Stanton, Senior Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Muhammad Bilal Zafar, a native and citizen of Pakistan, seeks review of a March 24, 2023, decision of the BIA affirming a December 19, 2018, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Muhammad Bilal Zafar*, No. A 209 171 298 (B.I.A. Mar. 24, 2023), *aff'g*, No. A 209 171 298 (Immigr. Ct. N.Y.C. Dec. 19, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have considered the IJ's decision as modified by the BIA, and thus we consider only the agency's credibility determination. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review "adverse credibility findings[] under the substantial evidence standard." *Hong Fei Gao v. Sessions*, 891

2

F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id.* § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76. The inconsistencies between Zafar's statements in his credible fear interview and his testimony, as well as a lack of reliable corroboration, provide substantial evidence for the agency's adverse credibility determination. *See Likai*

3

*Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully.").

The agency reasonably relied on inconsistencies between Zafar's testimony and his statements at his credible fear interview. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Zafar alleged that he was targeted by the Mughal family because they believed that his uncle had killed Ashraf Mughal.

First, Zafar gave inconsistent descriptions of a 2008 attack: He testified that he was attacked in 2008 by three Mughal family members "and then some 13 or 14 unknown people," and that the attack occurred as he "was coming back home from school at the end of the day," Cert. Admin. R. 143–44; but at his interview he identified three attackers, did not mention others, and stated that he was attacked on his way to school, *id.* at 443. Second, Zafar was inconsistent about a 2014 incident: He testified that he went to the hospital first before taking his medical report to the police and making a police report, *id.* at 146–47, 154–55; but he stated at his interview that he went to the police first, they told him to go to the hospital, and then the hospital told him to go to Lahore, *id.* at 445. He claimed this was "because they don't want to provide you're [*sic*] the medical report" and "the

4

police won't file a report without medical records but they make it so that the doctors don't give you medical records." *Id.* Lastly, Zafar gave inconsistent statements about where his uncle who had been accused of the murder was living: He testified that his uncle left Pakistan for Italy immediately after being acquitted of the murder charge, but returned to Pakistan in 2013, remained there through Zafar's 2016 departure from Pakistan, and was in Pakistan as of the 2018 hearing, *id.* at 171–74; but he inconsistently stated in his 2016 interview that his uncle was in Italy, and when asked why he was being targeted by the Mughals he said, "[b]ecause they can't get revenge on my uncle since he is in India," *id.* at 446.[1]

The agency was not required to credit Zafar's explanations for the inconsistencies and did not err in relying on the record of the credible fear interview. When asked by DHS counsel and the IJ about several of these inconsistencies, Zafar stated that he made mistakes at the interview because he was confused and had difficulty remembering events at that time; he asserted that his testimony was accurate because he had "verified" information by looking at

---

[1] In noting this statement from Zafar's credible fear interview, we do not rely on the notation that he said his uncle was in *India*. What is significant for purposes of the inconsistency analysis is that Zafar indicated that his uncle was *not in Pakistan* at the time when he was targeted. Neither DHS nor the IJ asked Zafar any questions about his purported reference to *India*, and the agency's decision does not hinge in any part on Zafar's prior reference to India. Moreover, in any event Zafar had no opportunity to explain the purported reference.

5

the police reports.  *Id.* at 148–49, 156.  When asked about his inconsistent testimony about where his uncle lived, Zafar claimed that he had not been asked about his uncle's then-current whereabouts during his interview, but that is not consistent with the record.  *Id.* at 174, 446.  The agency was not required to credit these explanations.  As the IJ reasoned, the explanations did not resolve why he forgot basic details of his own experience such as how many people attacked him or where his uncle lived, which is information he should not have needed to verify if the events had happened to him, particularly as the interview was closer in time to the relevant events than the hearing.  *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (emphasis in original) (quotation marks omitted)).

The agency also reasonably found the record of Zafar's credible fear interview sufficiently reliable, and thus did not violate Zafar's due process rights in admitting the record.  "Where the record of a credible fear interview displays the hallmarks of reliability, it appropriately can be considered in assessing an alien's credibility."  *Ming Zhang v. Holder*, 585 F.3d 715, 725 (2d Cir. 2009); *Singh*

6

*v. Bondi*, 139 F.4th 189 (2d Cir. 2025) ("'Immigration Judges should assess the accuracy and reliability of the interview based on the totality of the circumstances' . . . ."). The interview notes are detailed and memorialized in a typed list of questions and answers, the interview was conducted with an interpreter, the questioning was open-ended and sought to elicit details regarding an asylum claim, and Zafar's answers were responsive to the questions posed. *Ming Zhang v. Holder*, 585 F.3d at 725 (finding interview record sufficiently reliable under similar circumstances). Zafar's suggestion that the record is missing relevant exchanges is conclusory and unsupported, and the interview record does not support his argument that there must have been substantive exchanges that were not written down. He contends that the questions reflected on the record would not have taken the two and a half hours that the interview lasted, but the questioning spans 12 pages, the interview was conducted through an interpreter, and Zafar testified that the record omits non-substantive exchanges in which the interviewer prompted him to offer more details. Moreover, his assertion that the officer improperly pressured him to give answers is undermined by his statements that he was treated "very well," he had no questions about his rights, the summary the officer gave of his testimony was accurate, he had nothing further to add, and

7

he had no problems understanding the interpreter. *Id.* ("We . . . reject the notion that a petitioner's claim that she was nervous and distracted during the credible fear interview automatically undermines or negates its reliability as a source of her statements."); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 182–82 (2d Cir. 2004) (concluding that "fact that [petitioner] stated at the interview that he was comfortable speaking in a private room and that he understood the purpose of the interview undermines any claim that the interview was unduly coercive").

Having questioned Zafar's credibility, the agency also reasonably relied on his failure to corroborate his claim. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). The agency did not err in giving diminished weight to letters from Zafar's family members on the ground that they were from individuals unavailable for cross-examination, some of whom were interested witnesses. *See Likai Gao*, 968 F.3d at 149 (holding that "the IJ acted within her discretion in according . . . little weight [to letters] because the declarants (particularly [petitioner]'s wife) were interested parties and neither was available for cross-examination"); *Y.C. v. Holder*, 741 F.3d

8

324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence").

Zafar argues that the agency failed to consider the police reports in determining that he had failed to corroborate his claim. While the agency did not explicitly mention the police reports in determining that Zafar failed to corroborate his claim, the reports were discussed extensively at the hearing, thus suggesting that the IJ considered them. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) ("[W]e presume that an IJ has taken into account all of the evidence . . . unless the record compellingly suggests otherwise."). Moreover, the reports do not explain why he would have forgotten basic details, such as being attacked by a large group, or resolve material inconsistencies, such as whether his uncle remained in Italy after fleeing Pakistan.

In sum, the multiple inconsistencies and the lack of reliable corroboration provide substantial evidence for the adverse credibility determination. *See Xiu Xia Lin*, 534 F.3d at 167; *Biao Yang*, 496 F.3d at 273. That determination is dispositive of Zafar's claims for asylum, withholding of removal, and CAT relief because all three forms of relief were based on Zafar's alleged fear of the Mughal family. *See Hong Fei Gao*, 891 F.3d at 76.

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

10