# In re Y-L-, Respondent

*Decided April 25, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) In determining that an application for asylum is frivolous, the Immigration Judge must address the question of frivolousness separately and make specific findings that the applicant deliberately fabricated material elements of the asylum claim.

(2) Before the Immigration Judge makes a finding that an asylum application is frivolous, the applicant must be given sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

(3) The Immigration Judge must provide cogent and convincing reasons for determining that a preponderance of the evidence supports a frivolousness finding, taking into account any explanations by the applicant for discrepancies or implausible aspects of the claim.

FOR RESPONDENT: Khagendra Gharti-Chhetry, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Virna A. Wright, Assistant Chief Counsel

BEFORE: Board Panel: HURWITZ, Acting Vice Chairman; HOLMES and MILLER, Board Members.

HURWITZ, Acting Vice Chairman:

In a decision dated January 22, 2004, an Immigration Judge found the respondent removable on his own admissions and denied his applications for asylum, withholding of removal under section 241(b) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b) (2000), and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). On December 4, 2004, we affirmed the Immigration Judge's decision without opinion, and the respondent subsequently filed a petition for review. On July 11, 2006, the United States Court of Appeals for the Second Circuit remanded this case with a request that we further consider the Immigration Judge's finding that the respondent's asylum application was frivolous, and that we formulate standards for deciding when an asylum application may be found to be

frivolous. *Liu v. U.S. Dep't of Justice*, 455 F.3d 106 (2d Cir. 2006). Upon further consideration, the respondent's appeal from the Immigration Judge's finding that his asylum application was frivolous will be sustained, and that part of our decision affirming the Immigration Judge's ruling in that regard will be vacated.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the People's Republic of China who entered the United States in January 2002 without proper documents. The respondent was placed in removal proceedings and filed his original Application for Asylum and for Withholding of Removal (Form I-589) in Immigration Court in August 2002. The claim was based principally on problems related to his wife's practice of Falun Gong. A statement included with the original asylum application indicated that he and his wife had two children, a son born on September 24, 1989, and a daughter born on May 2, 1991. In regard to the second child, the statement provided:

> According to the family planning policy, we were not allowed to have a second child. However, my wife and I believe[d] that there would not be any social security and retirement system to assure peasants like us. Therefore we had a second child. We hid here and there to avoid being captured by government officials. In order to give birth to my daughter, Liu Yin Fang, we hid here and there and led a stressful life.

In support of his original application for asylum, the respondent provided copies of his children's birth certificates, each of which identified the respondent as the father and the respondent's wife as the mother. He also submitted a copy of a Household Registration Booklet listing himself, his wife, and his son and daughter as members of the household.

Nearly a year after filing the original asylum application, the respondent retained new counsel and filed an amended application with a supporting statement providing the following account of events. After their son's birth on September 24, 1989, his wife became pregnant again in August 1990. She avoided the quarterly check-ups with family planning officials because the second pregnancy violated the family planning laws. On April 20, 1991, four family planning officials came to their home and forcibly took his wife for an abortion. On May 8, 1991, the respondent's sister-in-law found an abandoned female infant alongside a road in the village. The respondent and his wife informally adopted the infant as their own. In December 1996, the family planning office learned of the second child and fined the respondent and his wife for an illegal adoption. The pressures of these events affected his wife's health and caused her to turn to the practice of Falun Gong for relief.

The remainder of the statement tracks the Falun Gong aspects of the claim contained in the original application and supporting statement. In support of

his amended asylum application, the respondent submitted an abortion certificate, a fine receipt, and statements from his wife and the sister-in-law who found the infant.

At a hearing before the Immigration Judge, the respondent testified concerning his request for asylum and answered questions from his attorney, the Government attorney, and the Immigration Judge. In regard to his wife's second pregnancy, he testified that his wife remained at home undetected for almost the entire term of her pregnancy until the four family planning officials came to their home and forcibly took her for an abortion.

After the hearing, the Immigration Judge issued an oral decision denying the respondent's requests for relief from removal and ordering him removed to the People's Republic of China. In her decision, the Immigration Judge found that the respondent had not presented a credible claim for asylum or withholding of removal. She also found that the respondent had submitted a frivolous application for asylum in that he had deliberately fabricated the account of the abortion and the illegal adoption in his amended asylum application in order to obtain immigration benefits in the United States.

The respondent appealed the Immigration Judge's decision. In regard to the frivolousness finding, the respondent stated in his notice of appeal that he did not mention his wife's abortion in the original application for asylum because "he did not meet the attorney and he was not interviewed by the attorney before filing the original I-589 " and "[t]he secretary missed mention[ing] his wife's abortion in his original I-589." Other than the conclusory statement that the determination was "arbitrary and capricious," and that there was no confirmation from the consulate that documents submitted by the respondent were fraudulent, the respondent's 8-page brief did not address the Immigration Judge's frivolousness finding. We affirmed the Immigration Judge's decision without opinion.

The respondent then petitioned the Second Circuit for review, challenging both the Immigration Judge's adverse credibility determination and her frivolousness finding. The Second Circuit concluded that "substantial evidence support[ed] the credibility ruling against [the respondent]" but remanded the frivolousness finding to give the Board "an opportunity, in the first instance, to formulate standards for deciding when an asylum seeker's application may be deemed frivolous." *Liu v. U.S. Dep't of Justice*, *supra*, at 108.

## II. STATUTORY AND REGULATORY FRAMEWORK

In 1996, Congress amended the immigration law to discourage the filing of frivolous asylum applications. Section 208(d)(4)(A) of the Act, 8 U.S.C. § 1158(d)(4)(A) (2000), requires the Attorney General to advise an alien applying for asylum, at the time of filing an application, of the consequences

of knowingly filing a frivolous application. *See also* 8 C.F.R. § 1240.11(c)(1)(iii) (2006). Those consequences are stated in section 208(d)(6) of the Act, which provides as follows:

> If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this Act, effective as of the date of a final determination on such application.

The regulation that governs the determination whether an asylum application is frivolous provides:

> For applications filed on or after April 1, 1997, an applicant is subject to the provisions of section 208(d)(6) of the Act only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum application. For purposes of this section, an asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim. For purposes of this section, a finding that an alien filed a frivolous asylum application shall not preclude the alien from seeking withholding of removal.

8 C.F.R. § 1208.20 (2006).

In preparing this regulation, the Attorney General stated that the Department of Justice was "carrying out one of the central principles of the asylum reform process begun in 1993; to discourage applicants from making patently false claims." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 447 (Jan. 3, 1997) (Supplementary Information). In the Federal Register Notice promulgating the final "Asylum Procedures" rule in 2000, the Attorney General added the following observations:

> One commenter stated that the regulatory definition of "frivolous" does not contain appropriate safeguards, and that the Service should advise every asylum applicant of the consequences of filing frivolous claims. The current regulation provides appropriate safeguards by stipulating that an immigration judge or the Board must be satisfied that an applicant had sufficient opportunity to account for any discrepancies before finding that an applicant filed a frivolous application, and by permitting an applicant to seek withholding of removal even if he or she is found to have filed a frivolous application. The regulation itself also advises an applicant that he or she is subject to the provisions of section 208(d)(6) of the Act if a final order specifically finds that the alien knowingly filed a frivolous application. Finally, both the instructions to the Form I-589 and the application itself warn the applicant about the consequences of filing a frivolous claim, as required by section 208(d)(4) of the Act.

Asylum Procedures, 65 Fed. Reg. 76,121, 76,128 (Dec. 6, 2000) (Supplementary Information).

# III. APPLYING THE STATUTORY AND REGULATORY FRAMEWORK

The implementing regulation provides a comprehensive framework for determining whether an asylum application is frivolous. Given the serious consequences of a frivolousness finding, the regulation provides a number of procedural safeguards. These include the following requirements: (1) notice to the alien of the consequences of filing a frivolous application; (2) a specific finding by the Immigration Judge or the Board that the alien knowingly filed a frivolous application; (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated; and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.[1] We address each of these requirements in turn.

## A. Notice

The statute and regulation require that the Attorney General advise the alien at the time of filing an asylum application of the consequences of filing a frivolous application, i.e., permanent ineligibility for any benefits under the Immigration and Nationality Act except for withholding of removal. *See* section 208(d)(6) of the Act; 8 C.F.R. § 1208.20. In this case, the record includes a written notice from the Immigration Judge entitled "Notice of Privilege of Counsel and Consequences of Knowingly Filing a Frivolous Application for Asylum," which sets forth the requisite warnings of the consequences of filing a frivolous asylum application.[2] Additionally, the Form I-589 contains a written warning that "[a]pplicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act." At the

---

[1] In light of the regulatory requirement that there be evidence of a deliberate fabrication of a material element of a claim, the term "fraudulent" may be more appropriate than the term "frivolous" when applied to a questionable asylum application. *See Barreto-Claro v. U.S. Att'y Gen.*, 275 F.3d 1334, 1339, n.11 (11th Cir. 2001) (observing that the term "frivolous" generally means "insignificant, trivial, silly or gay" (quoting Webster, New International Dictionary (3d ed. 1961))). Obvious legal insufficiency of a claim does not support a frivolousness finding. *Scheerer v. U.S. Att'y Gen.*, 445 F.3d 1311, 1318 (11th Cir. 2006).

[2] The notice, which was entered into the record as an exhibit on March 5, 2002, states in relevant part: "Before you file an asylum application (Form I-589) the law (section 208(d)(4) of the Immigration and Nationality Act) requires that you be advised specifically about the consequences of knowingly filing a frivolous application for asylum in the United States. If you knowingly file a frivolous application for asylum, YOU WILL BE BARRED FOREVER from receiving any benefits under the Immigration and Nationality Act. A frivolous application for asylum is one which contains statements or responses to questions that are deliberately fabricated. Not being granted asylum does not mean that your application is frivolous."

time of filing the original application, then counsel for the respondent assured the Immigration Judge that he had informed the respondent of the consequences of filing a frivolous application for asylum. As the respondent has not asserted a lack of notice of the consequences of filing a frivolous asylum application, we will focus our attention on the other requirements for a frivolousness finding.

## B. Specific Findings

The regulation subjects an alien to the penalty provision for filing a frivolous application "only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum application." 8 C.F.R. § 1208.20. The regulation further provides that "an asylum application is frivolous if any of its material elements is deliberately fabricated." *Id.* An element of a claim is "fabricated" when it misrepresents the truth. *Black's Law Dictionary* 597 (8th ed. 2004) (stating that "fabricated evidence" is "[f]alse or deceitful evidence"). A "deliberate" fabrication involves a knowing and intentional misrepresentation of the truth. *Id.* at 459 (stating that "deliberate" means "[i]ntentional; premeditated; fully considered"). Therefore, an Immigration Judge's specific finding that a respondent deliberately fabricated a material element of his asylum claim constitutes a finding that he knowingly filed a frivolous asylum application.

As a number of courts have observed, "'a finding of frivolousness does not flow automatically from an adverse credibility determination.'" *Liu v. U.S. Dep't of Justice*, *supra*, at 113 (quoting *Muhanna v. Gonzales*, 399 F.3d 582, 589 (3d Cir. 2005)); *see also Scheerer v. U.S. Att'y Gen.*, 445 F.3d 1311, 1317 (11th Cir. 2006) ("[A]n adverse credibility determination alone cannot support a finding of frivolousness."). We agree that the Immigration Judge must separately address the question of frivolousness, including a discussion of the evidence supporting a finding that the respondent deliberately fabricated a material element of the asylum claim.

The Immigration Judge in this case, after finding the respondent not credible, separately addressed the question of frivolousness and provided the following analysis:

> [T]he respondent's application for political asylum has been deliberately fabricated in order to obtain immigration benefits in the United States. The original I-589 application for political asylum indicates that the respondent has a daughter. The statement attached to that application indicates that his wife gave birth to that daughter and was hiding in order to be able to effectively give birth to that daughter. The respondent's new application is totally and completely different. It states that the daughter was adopted when the respondent's sister-in-law found the baby girl in a rice paddy.
>
> The respondent's Q&A airport statements and credible fear interviews also mention absolutely nothing about any family planning problems in the People's Republic of China, not any alleged forced abortion. The documentary evidence is totally and

completely lacking in order to overcome these most glaring discrepancies. It appears that the respondent and his wife do have a daughter and that she was naturally born to the respondent. This is substantiated by the household registration booklet and notarial birth certificate, and that the respondent has fabricated this story about an adopted daughter, in order to obtain immigration benefits in the United States. I, therefore, find that the respondent's application for asylum must also be deemed frivolous.

In these two paragraphs the Immigration Judge finds that the respondent "deliberately fabricated" the account of the abortion and illegal adoption in the second asylum application. As to materiality, she refers to "totally and completely different" aspects of the amended application–principally the account of the abortion and adoption. These findings meet the regulatory requirement that the Immigration Judge separately address and include specific findings that the respondent deliberately fabricated material elements of his asylum claim.

### C. Burden of proof

We now turn to whether the Immigration Judge's findings are supported by the evidence of record. In its remand, the court has requested that we provide guidance regarding "who carries the burden of proof, what degree of certainty is required, when an opportunity to be heard will be deemed sufficient, how 'deliberate' and 'material' a fabrication must be, and what deference the BIA owes to an IJ's finding in this context." *Liu v. U.S. Dep't of Justice*, *supra*, at 113.

Ordinarily, an applicant for relief from removal has the burden of demonstrating that he or she meets all of the requirements for eligibility for the applicable form of relief. *See* 8 C.F.R. § 1240.8(d) (2006) (providing that the alien shall have "the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion"). Moreover, "[i]f the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." *Id.*

A frivolousness finding, unlike a determination in regard to eligibility for a particular form of relief governed by 8 C.F.R. § 1240.8(d), is a preemptive determination which, once made, forever bars an alien from any benefit under the Act. Because of the severe consequences that flow from a frivolousness finding, the preponderance of the evidence must support an Immigration Judge's finding that the respondent knowingly and deliberately fabricated material elements of the claim. 8 C.F.R. § 1208.20. Under the regulation, plausible explanations offered by the respondent must be considered in the ultimate determination whether the preponderance of the evidence supports a frivolousness finding.

In regard to the requisite degree of proof, the court in *Liu v. U.S. Dep't of Justice*, *supra*, at 114, suggests that an emerging principle may be that in light of the serious consequences stemming from a frivolousness finding, "concrete and conclusive evidence of fabrication" should be required to support a finding of frivolousness. The court makes this suggestion after reviewing four published decisions upholding frivolousness findings and concluding that each involved "tangible evidence of fabrication that could not reasonably be disputed." *Id.* at 115 (citing *Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005) (medical records submitted by the alien were identified by the hospital as fraudulent); *Selami v. Gonzales*, 423 F.3d 621, 626-27 (6th Cir. 2005) (copied documents provided by the alien were clear forgeries when compared to true copies of the originals); *Efe v. Ashcroft*, 293 F.3d 899, 908 (5th Cir. 2002) (alien's claim regarding age was conclusively disproved by dental records); *Barreto-Claro v. U.S. Att'y Gen.*, 275 F.3d 1334, 1339 (11th Cir. 2001) (alien admitting he lied in his previously filed asylum application).

We find no indication in the statute or regulation that a frivolousness finding must be supported by "concrete or conclusive" evidence of fabrication. As a general rule, "the law draws no distinction between direct and circumstantial evidence in requiring the government to carry its burden of proof." *United States v. MacPherson*, 424 F.3d 183, 190 (2d Cir. 2005). Moreover, proof that conduct was knowing or deliberate may be demonstrated by circumstantial evidence. *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749 (2d Cir. 1986). After taking into account the respondent's explanations for discrepancies or implausible aspects of the claim, however, the Immigration Judge must provide cogent and convincing reasons for finding by a preponderance of the evidence that an asylum applicant knowingly and deliberately fabricated material elements of the claim.

As the Attorney General emphasized at the time the regulation was promulgated, the regulatory standards for the frivolousness finding have been formulated with the severity of the consequences in mind. *See* Asylum Procedures, 65 Fed. Reg. at 76,128 ("The Department believes that the current regulation provides for appropriate safeguards for filing a frivolous asylum application, and that, for the reasons set forth in the supplemental information to the January 3, 1997, proposed rule, the definition of frivolous is sufficient.") (Supplementary Information). As discussed below, in addition to mandating notice of consequences and specific findings of deliberate fabrication of a material element of the asylum application, as well as placing the ultimate burden of proof on the Government, the regulation requires that particular attention be given to providing the alien a sufficient opportunity to account for any discrepancies or implausible aspects of the claim relied on in the frivolousness finding.

In considering an appeal from an Immigration Judge's decision filed after September 25, 2002, as was the appeal in this case, we give de novo review

to questions of law, discretion, and judgment, but review findings of fact only for clear error. 8 C.F.R. §§ 1003.1(d)(3)(i)-(ii) (2006). We may not engage in fact-finding of our own other than to take administrative notice of commonly known facts. 8 C.F.R. § 1003.1(d)(3)(iv). Determining whether a fabrication was knowing or deliberate is a factual question of intent that is reviewed for clear error. *See United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003). Whether a fabrication was material involves mixed questions of fact and law. *See United States v. Gaudin*, 515 U.S. 506, 521 (1995). Whether the Immigration Judge properly applied the regulatory framework is a question of law.

In her decision, the Immigration Judge identified concerns regarding discrepancies and plausibility that indicated to her that the respondent may have deliberately fabricated material elements of his amended asylum application. *See Monter v. Gonzales*, 430 F.3d 546, 553-54 (2d Cir. 2005) (stating that a misrepresentation is material if it has "'a natural tendency to influence or was capable of influencing, the decision of the decisionmaking body to which it was addressed'" (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988))). These concerns were not mere incidental or tangential discrepancies or omissions. As the court acknowledged in its assessment of the Immigration Judge's credibility determination, the respondent's claim in his original application "that his wife gave birth to their second child, rather than simply reporting (without emphasis or elaboration) that they had adopted their daughter in May 1991" is a "glaring inconsistency" when compared to the new claims in the amended application based on an illegal adoption of that same child after a forced abortion. *Liu v. U.S. Dep't of Justice*, *supra*, at 111.

As the respondent's explanations must be considered in determining whether a preponderance of the evidence ultimately supports the frivolousness finding, we turn to the question whether the respondent was afforded a sufficient opportunity to account for the discrepancies and implausible aspects of his claim relied on by the Immigration Judge.

## D. Sufficient Opportunity To Explain

The regulation requires that the frivolousness finding "shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim." 8 C.F.R. § 1208.20. The regulation requires that the alien be given "ample opportunity during his hearing to address and account for any deliberate, material fabrications upon which the IJ may base a finding of frivolousness." *Mingkid v. U.S. Att'y Gen.*, 468 F.3d 763, 769 (11th Cir. 2006) (quoting *Scheerer v. U.S. Att'y Gen.*, *supra*, at 1317).

In order to afford a sufficient opportunity to account for discrepancies, it would be a good practice for an Immigration Judge who believes that an

applicant may have submitted a frivolous asylum application to bring this concern to the attention of the applicant prior to the conclusion of proceedings. *See, e.g., Farah v. Ashcroft*, 348 F.3d 1153, 1158 (9th Cir. 2003) (finding that where the Immigration Judge relied on different inconsistencies in making the adverse credibility determination from those used in making the frivolousness determination, the respondent lacked a sufficient opportunity to explain the discrepancies related to the frivolousness finding). In some cases, the Government may raise the issue of frivolousness during the course of the hearing. *See, e.g., Ignatova v. Gonzales, supra*, at 1214 (noting that the Government filed a motion requesting that the Immigration Judge address whether the application was frivolous). In other situations, the Immigration Judge may raise the issue and afford the respondent an opportunity to respond with an explanation or corroborating evidence. *See, e.g., Selami v. Gonzales, supra* (observing that the Immigration Judge adjourned the hearing to afford the respondent an opportunity to respond to concerns that documents submitted in support of his asylum application appeared to be forged).

In the case before us, the Immigration Judge did not mention during the course of the hearing that she was contemplating a frivolousness finding. We do not find that the particular concerns underlying the frivolousness finding were such that the respondent should necessarily have anticipated such a finding and provided explanations relevant to the question whether he deliberately fabricated the account of the forced abortion and illegal adoption in the second application. *See Ye v. Dep't of Homeland Security*, 446 F.3d 289 (2d Cir. 2006) (finding that for purposes of an adverse credibility determination the respondent need not be afforded an opportunity to respond to self-evident inconsistencies).[3]

The respondent did, however, explain during the course of the hearing why the new claims in his amended asylum application were not included in his original application. In a cover statement accompanying his amended application, he explained that when he filed the original asylum application he did not know that family planning was a basis for asylum, that he had never spoken to his first attorney, that the original asylum application was never read

---

[3] The requirement that the respondent be afforded a sufficient opportunity to explain is not to be applied in a mechanical fashion. There may be situations in which the deliberate fabrication of a material aspect of the asylum claim is so clear on the record that a formal request for an explanation would be a needless exercise. *See, e.g., Barreto-Claro v. Att'y Gen., supra* (finding that the respondent's admissions that he stated falsely on his first asylum application that he had never before applied for refugee or asylum status and that he gave a fraudulent account of how he came to the United States established that he deliberately fabricated facts that were materially relevant to the question whether he had been firmly resettled in another country prior to arrival in the United States).

back to him, and that he did not have a chance to correct mistakes in the original application prior to the time it was filed in Immigration Court.[4]

Although the respondent's explanations raise as many questions as they answer, they do have some bearing on whether he deliberately fabricated critical aspects of the amended application and, therefore, should have been addressed and evaluated by the Immigration Judge. *See Ming Shi Xue v. BIA*, 439 F.3d 111, 123 (2d Cir. 2006) (finding that the Immigration Judge erred in failing to consider the explanations that an applicant gave in order to rectify discrepancies in testimony).

The respondent essentially blames his first attorney and that attorney's secretary for including incorrect information in his first application, for missing essential elements of his persecution claim that necessitated the filing of an amended application, and for failing to obtain his verification of the contents of his statement accompanying the original application. The regulation provides that "[t]he applicant's signature [on an asylum application] establishes a presumption that the applicant is aware of the contents of the application." 8 C.F.R. § 1208.3(c)(2) (2006). The respondent's first attorney signed the declaration under Part E of the original asylum application verifying that the information in the application "was provided to me by the applicant and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence."

Under the circumstances in this case, the Immigration Judge had good reason to be concerned with the plausibility of the abortion and illegal adoption aspects of the respondent's amended asylum application. She should not, however, have entered a frivolousness finding without communicating these concerns to the respondent before concluding the proceedings and without addressing the respondent's explanations. Had she confronted the respondent with her concerns, she could have further probed for clarification of the manner in which the original asylum application was prepared. *See Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997) (describing the shared responsibility of parties and the Immigration Judge to assure that relevant

---

[4] The respondent's concession that his first statement included erroneous information is not enough in and of itself to indicate that he knowingly filed an application containing a deliberate fabrication of a material element of his claim. He contends that he was unaware of the incorrect information included in that application and unaware that his wife's forced abortion or their fines for illegally adopting a child could be relevant to a claim for asylum. As we are limited to reviewing the Immigration Judge's findings for clear error and do not engage in factual determinations, our focus on appeal is limited to whether the evidence supports a finding in regard to the factors in the amended asylum application identified by the Immigration Judge as deliberately fabricated or implausible material elements of the claim.

evidence is included the record). Further inquiry could have included a request for corroborating evidence from former counsel regarding the manner in which the first asylum application was prepared.[5]

## IV. CONCLUSION

At the time of filing his amended asylum application, the respondent provided explanations relevant to the question whether he had deliberately fabricated a material element of the claims in his amended asylum application. These explanations should have been more fully explored during the course of the hearing and addressed in the Immigration Judge's decision. For these reasons, we find that the "frivolousness" determination in this case does not meet the regulatory requirement that the respondent be afforded a sufficient opportunity to explain perceived discrepancies or implausibilities. We will therefore vacate our prior decision to the extent that it affirms the Immigration Judges' frivolousness finding and sustain the respondent's appeal from that finding.

**ORDER:** Our prior decision is vacated to the extent that it affirms the Immigration Judge's frivolousness finding, and the respondent's appeal from the Immigration Judge's frivolousness finding is sustained.

**FURTHER ORDER:** The respondent is ordered removed from the United States to the People's Republic of China pursuant to the Immigration Judge's decision of January 22, 2004.

---

[5] When an applicant for asylum claims ineffective assistance of counsel as an exception to the 1-year deadline for filing an asylum application, for example, he must file an affidavit describing the agreement entered into with counsel, inform counsel whose integrity or competence is being impugned of the allegations being leveled and provide an opportunity to respond, and indicate whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal obligations. 8 C.F.R. § 1208.4(a)(5)(iii) (2006); *see also Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988) (setting forth the same requirements for motions to reopen based on ineffective assistance of counsel).