PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-2250

HENRI KAMENGA NDIBU,

Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: January 27, 2016         Decided: May 19, 2016

Before TRAXLER, Chief Judge, and THACKER and HARRIS, Circuit Judges.

Petition for review denied by published opinion. Chief Judge Traxler wrote the opinion, in which Judge Thacker and Judge Harris joined.

**ARGUED:** Allison Lukanich, MELO & HURTADO PLLC, Raleigh, North Carolina; Jim Melo, U.S. COMMITTEE FOR REFUGEES & IMMIGRANTS, Raleigh, North Carolina, for Petitioner. Jennifer A. Singer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Nitin Kumar Goyal, Kevin Schroeder, MELO & HURTADO PLLC, Raleigh, North Carolina, for Petitioner. Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Russell J.E. Verby, Senior Litigation Counsel, Nancy K. Canter, Trial Attorney, Office of Immigration

Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

----

TRAXLER, Chief Judge:

Henri Kamenga Ndibu petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") which affirmed the immigration judge's conclusion that Ndibu filed a frivolous asylum application and was therefore ineligible for adjustment of status. For the reasons that follow, we deny Ndibu's petition for review.

## I.

Ndibu, a native and citizen of the Democratic Republic of the Congo ("DRC"), entered the United States in September 2001 using a Canadian passport that did not belong to him. In July 2004, after evading the attention of immigration officials for nearly three years, Ndibu filed an affirmative application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Ndibu claimed that he feared persecution on account of his political opinion were he to return to the Congo. According to Ndibu's supporting affidavit, he was living in the DRC in June 2003 when he was arrested by government security forces because of his membership in the Army of Victory Church and participation in the "Let us Save the Congo" movement. Ndibu alleged that he was detained for 15 days, during which time he was "endur[ing] severe mistreatments, . . . sexual abuses imposed over us by the police officers, and other types of tortures." J.A. 1542-43.

3

In September 2004, the Department of Homeland Security ("DHS") placed Ndibu in removal proceedings, charging him with removability for being present in the United States without valid documentation. See 8 U.S.C. §§ 1227(a)(1)(A); 1182(a)(7)(A)(i)(I). At the removal hearing, Ndibu testified and essentially repeated the claims he asserted in his affidavit. In April 2006, the immigration judge denied Ndibu relief from removal. The immigration judge concluded that Ndibu failed to demonstrate that he filed his asylum claim within one year of entering the United States, finding that Ndibu's testimony that he arrived in the United States in 2003 was not credible and that he failed to present other evidence supporting an entry date of 2003. The immigration judge offered specific reasons for its adverse credibility determination in this regard. Additionally, the immigration judge concluded that Ndibu failed to establish "a clear probability of persecution" and denied his claim for withholding of removal. Singh v. Holder, 699 F.3d 321, 332 (4th Cir. 2012) ("To prevail on his withholding of removal claim, [the applicant] must establish a clear probability of persecution on the basis of race, religion, nationality, political opinion, or membership in a particular social group." (internal quotation marks omitted)). In explaining her decision, the immigration judge implied that Ndibu lacked credibility regarding his "membership in the

4

political organizations that he claimed to have belonged to," J.A. 302, but did not provide specific reasons for doubting Ndibu's credibility in this regard. Furthermore, the immigration judge stated that even if Ndibu's testimony had been credible regarding his political affiliations, the evidence still would have failed to demonstrate a "a clear probability of persecution" if he returned to the DRC. J.A. 302. And, finally, the immigration judge denied relief under the Convention Against Torture ("CAT"), see 8 C.F.R. § 1208.16(c), stating summarily that Ndibu failed to show "that it would be more likely than not that [Ndibu] would be tortured if he were removed to the [DRC]." J.A. 303.

Ndibu appealed, and in April 2008, the BIA affirmed the denial of asylum, concluding that substantial evidence supported the immigration judge's conclusion that Ndibu "failed to establish, through clear and convincing evidence, that his asylum application was filed within one year of his arrival in the United States." J.A. 261. As to the immigration judge's denial of withholding of removal and relief under the CAT, however, the BIA found the decision to be "inadequate for purposes of our appellate review." J.A. 261. The BIA concluded that the immigration judge "did not adequately explain the reasons for her adverse credibility finding as to [Ndibu's political affiliation]." J.A. 261. The BIA also rejected the

5

alternative conclusion that Ndibu's evidence would have been insufficient even if Ndibu's testimony had been credible because the immigration judge "failed to make a specific finding as to whether such past treatment, if credible, constituted persecution on account of a protected ground, and, if so, why the presumption of 8 C.F.R. § 1208.16(b)(1) would be overcome." J.A. 262.[1]  Thus, the BIA remanded the matter "for a more complete decision" as to the withholding and CAT claims.

In September 2008, Ndibu failed to appear before the immigration judge for the remanded proceedings, and he was ordered removed in absentia.  In November 2010, however, the immigration judge granted Ndibu's motion to reopen proceedings on the grounds that Ndibu did not receive sufficient notice of the hearing following remand from the BIA.

During the proceedings on the remanded claims for relief from removal, Ndibu, represented by new counsel, applied for an

---

[1]  The applicable regulation provides that "[i]f the applicant is determined to have suffered past persecution in the proposed country of removal on account of" one of the protected grounds, "it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal" for the same reason.  8 C.F.R. § 1208.16(b)(1)(i). "This presumption may be rebutted if . . . [the] immigration judge finds by a preponderance of the evidence" that "[t]here has been a fundamental change in circumstances such that the applicant's life or freedom would [no longer] be threatened" or "[t]he applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal."  Id.

6

adjustment of status on the basis of his marriage to a United States citizen in 2002. See 8 U.S.C. § 1255(a). "Because an alien seeking to adjust his status [to that of a lawful permanent resident] is in a position similar to that of an alien seeking entry into the United States," Ferrans v. Holder, 612 F.3d 528, 531 (6th Cir. 2010), he is required to establish that he is admissible in the first place, see 8 U.S.C. § 1255(a). The admissibility requirement was problematic for Ndibu, who admitted to the immigration court that he had previously "sought to procure an immigration benefit by fraud or by concealing or misrepresenting a material fact," J.A. 1000, in that (1) he first entered the United States in 2001 using a "Canadian Passport issued to Charles Legault" and (2) he "[made] false statements to the Immigration Court so that [he] could obtain asylum," J.A. 1001. An alien is inadmissible who "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under [the INA]." 8 U.S.C. § 1182(a)(6)(C)(i). Therefore, Ndibu applied for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(i), which permits the Attorney General, in her discretion, to "waive the application of [§ 1182(a)(6)(C)(i)] in the case of an immigrant who is the spouse . . . of a United States citizen."

7

At the waiver hearing, Ndibu testified that he entered this country on September 8, 2001, using the aforementioned Canadian passport which was obtained for him by his parents because they believed it was unsafe for then-19-year-old Ndibu to remain in the DRC. Ndibu claimed that he did not want to enter the United States under false pretenses but eventually acceded to pressure from his parents. Ndibu married his wife, a United States citizen, in December 2002. He subsequently asked his brother, who enjoyed permanent legal resident status, to help him adjust his status. Ndibu's brother incorrectly advised him that the only way for him to obtain an adjustment of status was to apply for asylum, and referred Ndibu to a friend named George, who was not a lawyer but prepared the asylum application for Ndibu and helped him file it in 2004. Ndibu testified that George had concocted the facts supporting his asylum claim that he feared political persecution if he were to return to the DRC, and Ndibu admitted falsely testifying at the asylum hearing that he was tortured and sexually abused during his alleged 2003 detention. Likewise, Ndibu admitted to the court that his application falsely represented that he arrived in 2003 and that he signed the asylum application knowing that it was false. Ndibu also

acknowledged that he lied on the application by stating that he was not married.[2]

Ndibu nonetheless suggested to the immigration court that, despite having made a mistake in agreeing to submit a false asylum claim, he had otherwise lived as a law-abiding member of the community and that he was worthy of a fraud waiver to enable him to adjust his status and remain in the United States with his family.

On May 23, 2013, the immigration judge issued an order denying Ndibu's applications for a waiver of inadmissibility and an adjustment of status. The immigration judge found that Ndibu "knowingly made a frivolous application for asylum," 8 U.S.C. § 1158(d)(6), and "'deliberately fabricated' material elements of his claim after having been advised of the consequences for so doing," J.A. 77 (citing 8 C.F.R. § 1208.20). The court specifically noted that Ndibu "knew it was false when he claimed

---

[2] After asylum was denied in 2004, Ndibu hired a Maryland immigration attorney to represent him. Ndibu testified that this attorney did not meet with Ndibu in person, explore his options or take any steps at all to assist him and simply continued forward with the false asylum claim. According to the record, this attorney was later convicted of conspiracy to prepare false asylum applications, immigration fraud, and obstruction of official immigration proceedings.

After the removal order was entered against Ndibu in absentia, he hired his current counsel who has provided excellent representation in the pursuit of an adjustment of status for Ndibu.

[that he was] tortured and sexually abused in the Congo," J.A. 77, even though the I-589 asylum application Ndibu signed expressly warned against filing a frivolous claim for asylum. As a consequence of the frivolousness finding, the immigration judge determined Ndibu was "permanently ineligible for any benefits under [the INA]." 8 U.S.C. § 1158(d)(6).

The BIA dismissed Ndibu's subsequent appeal. The BIA agreed that Ndibu was permanently barred from receiving any immigration benefits because he "knowingly made a frivolous application for asylum after having been advised of the consequences of doing so." J.A. 2. The BIA observed that Ndibu "conceded at his hearing that he fabricated numerous aspects of his claim . . . , including his date of entry, his claimed detention and torture in [the DRC], and his marital status, among other things." J.A. 2. Ndibu acknowledged to the BIA that he signed the asylum application knowing that it contained falsities but explained that he did so because "'[he] was under pressure, and . . . made a mistake.'" J.A. 2. The BIA found no clear error in the immigration judge's determination that this explanation did not excuse the material fabrications contained in the asylum application.

The BIA likewise rejected Ndibu's argument that the frivolous application bar should not be applied because he did not have effective notice of the consequences of filing a

10

frivolous asylum application. The BIA, like the immigration judge, noted that the standard asylum application form I-589 provided Ndibu "with written notice of the consequences of filing a frivolous asylum application." J.A. 3. The BIA concluded that this constituted adequate warning under 8 U.S.C. § 1158(d)(6).

Next, the Board found that the involvement of third parties (such as his brother's friend George) in the application process did not excuse Ndibu's fraudulent statements. The BIA pointed out that Ndibu had "numerous opportunities . . . to correct the false statements" but failed to do so, and that he "conceded that the handwriting throughout the application was his, and that he signed the document . . . aware . . . the information contained therein [was] false." J.A. 3. The BIA therefore dismissed Ndibu's appeal. Ndibu subsequently petitioned this court for review.

## II.

An alien who "has knowingly made a frivolous application for asylum" is "permanently ineligible" for immigration benefits. 8 U.S.C. § 1158(d)(6). An asylum application is frivolous "if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20. The INA mandates that "[a]t the time of filing an application for asylum, the Attorney General shall . . . advise the alien . . . of the consequences .

11

. . of knowingly filing a frivolous application for asylum." 8 U.S.C. § 1158(d)(4)(A). Notice is a prerequisite to a finding of frivolousness; before an application for asylum is declared frivolous, the alien seeking asylum must be given the statutorily-required notice. See 8 U.S.C. § 1158(d)(6) ("If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under [the INA] . . . ." (emphasis added)).[3]

Ndibu first contends that he did not receive adequate notice of the consequences of filing a frivolous asylum claim. The record reflects that on July 22, 2004, Ndibu printed his name and signed his asylum application directly underneath the

---

[3] The BIA has provided a list of requirements that must be met before an asylum application is declared frivolous:

> (1) notice to the alien of the consequences of filing a frivolous application; (2) a specific finding by the Immigration Judge or the [BIA] that the alien knowingly filed a frivolous application; (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated; and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

In re Y-L-, 24 I. & N. Dec. 151, 155 (BIA 2007); see 8 C.F.R. § 1208.20. For our purposes, only the notice requirement is at issue.

12

paragraph labeled "WARNING." That paragraph warns, among other things, that "[a]pplicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act." J.A. 1538. By signing the application, Ndibu affirmed "under penalty of perjury" that "this application and the evidence submitted with it are all true and correct." Id. Moreover, during the initial asylum hearing in April 2006, the immigration judge asked Ndibu if he had any changes or additions to make to the application. Ndibu's counsel noted only a few typographical errors.

Ndibu acknowledges that the I-589 asylum application form sets forth a warning about the consequences of filing a frivolous asylum application. Ndibu argues, however, that this printed notice is inadequate and that § 1158(d)(4)(A) requires the immigration judge to provide an oral warning as well. We cannot agree. The statute requires that "[a]t the time of filing an application for asylum, the Attorney General shall . . . advise the alien . . . of the consequences . . . of knowingly filing a frivolous application for asylum." 8 U.S.C. § 1158(d)(4)(A). The warning supplied by the I-589 form clearly satisfies these basic requirements by advising asylum applicants that they will be "permanently ineligible for any benefits under the [INA]" if they knowingly file a frivolous application. J.A.

13

1538.  And, because every asylum applicant must complete, sign and submit an I-589 form, the inclusion of the warning on the form itself ensures that the required notice is received "[a]t the time of filing."  8 U.S.C. § 1158(d)(4)(A).  In fact, because the applicable "regulations permit filing the application in a variety of different ways, including by mail or at a hearing before an [immigration judge]," placing "[t]he warning on the asylum application form itself, therefore, is the only means under the current regulatory scheme by which notice may be given at the time of filing, regardless of the manner of filing."  Niang v. Holder, 762 F.3d 251, 254 (2d Cir. 2014) (per curiam) (emphasis added) (internal quotation marks omitted).  The INA makes no mention of the form that the required notice must take, oral or written.  It simply does not require that an immigration judge advise an alien—orally or in in writing—of the consequences of knowingly filing a frivolous application.

Ndibu concedes that every circuit court of appeals to have considered the issue has ruled that the written warning set forth on the I-589 asylum application satisfies the notice requirement of § 1158(d)(4)(A) without an additional oral warning from an immigration judge at the asylum hearing.  See Niang, 762 F.3d at 254; Ruga v. U.S. Att'y Gen., 757 F.3d 1193, 1197 (11th Cir. 2014); Pavlov v. Holder, 697 F.3d 616, 618 (7th Cir. 2012); Cheema v. Holder, 693 F.3d 1045, 1049 (9th Cir.

14

2012); Ribas v. Mukasey, 545 F.3d 922, 929–30 (10th Cir. 2008). We find these decisions to be persuasive and join these courts in concluding the warning supplied on the I-589 form is sufficient in and of itself and need not be supplemented by the immigration judge.[4]

Nonetheless, Ndibu urges us to ignore our own plain reading of the text, break from our sister circuits and defer to the BIA's interpretation of the notice provision, which Ndibu contends is contrary to the foregoing line of cases. We decline to do so, for a couple of reasons. First, because the language of the statute is clear and unambiguous, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984). "[D]eference to [the agency's] statutory interpretation is called for only when the devices of judicial

---

[4] We further note that, as in the cases decided by our sister circuits, there is no credible claim here that a language barrier prevented Ndibu from understanding the consequences of filing a frivolous asylum application, as supplied on the I-589 form. See Niang, 762 F.3d at 254 n.1; Ruga, 757 F.3d at 1196; Pavlov, 697 F.3d at 618–19; Cheema, 693 F.3d at 1049 n.4; Ribas, 545 F.3d at 930. Ndibu conceded before the immigration judge that he was aware "of the consequences of knowingly filing a frivolous asylum claim," J.A. 207, and that the notice requirement "ha[d] been clearly complied with," J.A. 208. His claim before this court that he did not understand the consequences stated on the I-589 form is thus foreclosed by the record.

15

construction have been tried and found to yield no clear sense of congressional intent." General Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004). It is clear that Congress did not intend to require oral notice from an immigration judge to satisfy § 1158(d)(4)(A).

Second, even if we were to consider the line of BIA decisions relied upon by Ndibu, these decisions do not aid him. See Matter of X-M-C-, 25 I. & N. Dec. 322 (BIA 2010); Matter of B-Y-, 25 I. & N. Dec. 236 (BIA 2010); Matter of Y-L-, 24 I. & N. Dec. 151 (BIA 2007). In these decisions, the BIA did not conclude that the INA mandated additional oral warnings from the immigration judge at the asylum hearing; rather, the BIA merely suggested that "it would be a good practice for an Immigration Judge who believes that an applicant may have submitted a frivolous asylum application to bring this concern to the attention of the applicant prior to the conclusion of proceedings." Matter of Y-L-, 24 I. & N. Dec. at 159-60; see Matter of B-Y-, 25 I. & N. Dec. at 242 ("[O]ur 'good practice' suggestion in Matter of Y-L- was not meant to add a blanket requirement that an Immigration Judge must provide additional warnings during the course of the merits hearing that a frivolousness determination is being considered."). Moreover, the purpose of this particular "good practice" directive from the BIA was "to afford a sufficient opportunity [for the asylum-

16

seeker] to account for discrepancies" in the application for asylum. Matter of Y-L-, 24 I & N Dec. at 159. This line of decisions does not purport to interpret the manner in which the notice required at the time of filing under § 1158(d)(4)(A) is to be issued; rather, these decisions provide guidance as to what is required to satisfy the regulation mandating that "during the course of the proceedings, [the applicant] [have] sufficient opportunity to account for any discrepancies or implausible aspects of the claim." 8 C.F.R. § 1208.20 (emphasis added).

In sum, we conclude that the notice set forth in the I-589 application for asylum suffices to satisfy the requirement under § 1158(d)(4)(A) that the applicant be notified of the consequences of filing a frivolous application. Although an immigration judge is free to give an applicant additional warnings during the hearing, there is no statutory requirement that he do so.

### III.

We touch briefly on Ndibu's remaining arguments, finding them to be without merit. Ndibu asserts that the notice was inadequate because his English ability was limited at the time he filed his initial application and because he was assisted by an unlicensed individual, and later by ineffective legal counsel. Accordingly, Ndibu argues that affirming the

17

frivolousness finding would amount to a due process violation. As the Attorney General points out, however, Ndibu acknowledged under oath at the hearing in March 2013 that he knew when he was signing the asylum application in 2004 that it contained false information. Specifically, he admitted that he falsely claimed he was not married, falsely claimed he entered this country in July 2003, and falsely testified that he was detained in the DRC, tortured and sexually abused on account of his political affiliations. Ndibu acknowledged that he knew the information was false when he signed the application attesting to its contents. Accordingly, Ndibu's assertion now that he did not know what he was doing due to a language barrier, and blaming his preparer and counsel for his frivolous application, is unavailing, since he clearly stated that he knowingly lied and committed perjury.[5] Given that he acknowledged intentionally lying on his application and committing perjury, Ndibu cannot show prejudice to support a due process claim.

Ndibu finally asserts that it was error for the immigration judge to make a frivolousness finding because the issue was not properly before the immigration judge on remand. In April 2008,

---

[5] Further, as the Attorney General notes, Ndibu made no attempt to comply with the requirements of Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988), as required to set forth an ineffective assistance claim in immigration proceedings. See Xing Yang Yang v. Holder, 770 F.3d 294, 299 n.6 (4th Cir. 2014).

the BIA sustained the immigration judge's denial of asylum on the basis that Ndibu failed to demonstrate that he applied for asylum within one year of his arrival in the United States. The BIA remanded Ndibu's claims for withholding of removal under the INA and the CAT; therefore, Ndibu's claim for asylum was not covered by the remand. Ndibu argues that § 1158(d)(6) "implies that [a] frivolous finding will be made only during the time the asylum application is before the adjudicating body, not after a final determination has already been taken." Brief of Petitioner at 25. Ndibu thus believes that once the BIA affirmed the immigration judge's denial of asylum, his asylum claim was no longer a "live" issue and it was improper on remand for the immigration judge to make a frivolousness finding.

Ndibu did not raise this particular argument before the BIA on appeal from the immigration judge's finding that he had filed a frivolous asylum application. Instead, Ndibu argued to the BIA that he withdrew his asylum application following remand and voluntarily confessed his false asylum claims, "elect[ing] to correct prior misrepresentations in the interest of good faith." J.A. 28. Because he confessed and "withdrew" the asylum claim without being coerced by the court, Ndibu argued the frivolousness bar should not be applied. This is a different argument than the one Ndibu raised in the petition for review to this court. Failure to make the argument that a frivolousness

19

finding was inappropriate on remand deprives us of jurisdiction to consider the claim.  See <u>Tiscareno-Garcia v. Holder</u>, 780 F.3d 205, 210 (4th Cir. 2015) (observing that "an alien who does not raise a particular claim before the BIA fails to exhaust his administrative remedies as to that claim" such that "the federal courts lack jurisdiction to consider it").  Accordingly, we reject this argument as well.

IV.

In accordance with the foregoing discussion, we deny Ndibu's petition for review.

<u>PETITION FOR REVIEW DENIED</u>