**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1778**

———————

GURWINDER SINGH,

          Petitioner,

    v.

PAMELA JO BONDI, Attorney General,

          Respondent.

———————

On Petition for Review of an Order of the Board of Immigration Appeals.

———————

Argued:  September 9, 2025                    Decided:  November 5, 2025

———————

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

———————

Petition for review denied by unpublished per curiam opinion.

———————

**ARGUED:**  Guido Moreira, LAW OFFICE OF GUIDO MOREIRA, Brooklyn, New York, for Appellant.  Ilana Joslyn Snyder, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Sam H. Hasan, HASAN LAW GROUP PLLC, Falls Church, Virginia, for Petitioner.  Brian Boynton, Principal Deputy Assistant Attorney General, Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gurwinder Singh petitions for review of a final removal order of the Board of Immigration Appeals ("BIA"), affirming an Immigration Judge ("IJ") who ruled that Singh knowingly filed a frivolous asylum application and is, as a result, ineligible for relief under the Immigration and Nationality Act ("INA"). Singh also challenges the BIA's denial of his motion for a remand to the IJ, in order to allow him to pursue two additional claims — a withholding of removal and protection under the Convention Against Torture ("CAT"). As explained herein, because there was no error in either of the challenged rulings, we deny Singh's petition for review.

## I.

## A.

We begin with Singh's challenge to the IJ and the BIA's determination that Singh filed a frivolous asylum application. A noncitizen who "has knowingly made a frivolous application for asylum," after receiving notice of the potential consequences, "shall be permanently ineligible for any benefits under" the INA. *See* 8 U.S.C. § 1158(d)(6). Put simply, "an asylum application is frivolous 'if any of its material elements is deliberately fabricated.'" *See Ndibu v. Lynch*, 823 F.3d 229, 234 (4th Cir. 2016) (quoting 8 C.F.R. § 1208.20); *see also Matter of Y-L-*, 24 I. & N. Dec. 151, 155 (BIA 2007).

Of relevance to this challenge, Singh legally entered the United States and proceeded to file an application for asylum in July 2000, declaring that he had been physically harmed by the Indian police after the arrest and subsequent disappearance of his

2

brother who, according to Singh, had been targeted for political activities. Therein, Singh also asserted that he was beaten by the Indian police when he himself became politically active. Singh further claimed that he had been working as a farmer in India. Following an interview with an asylum officer, Singh's application for asylum was granted in November 2000. Continuing to rely on the sworn representations made to support his asylum claim, Singh successfully adjusted his status to Lawful Permanent Resident in 2006, and eventually filed to become an American citizen in 2011.

Notably, it was not until Singh was confronted with evidence of fraud by a Citizenship and Immigration Services officer in a 2013 naturalization interview — approximately 13 years after his asylum application had been granted — that Singh confessed. He then acknowledged that most of the material facts asserted in support of his earlier asylum application were entirely false. Indeed, Singh's brother was neither missing, arrested, nor politically active in India. The brother had lived in the United States in the 1990s. Likewise, Singh revealed that he was never arrested and had not been politically active in India. Singh also admitted to concealing other facts that could have undermined his asylum award, including that he had served in the Indian military for several years prior to his arrival here in 2000, and that he had not been working as a farmer in India.

Of utmost importance here, in response to a Notice to Appear issued by the Department of Homeland Security, Singh conceded through his counsel in 2014 that he was removable as then charged, and admitted that he had "procured [his] admission, visa, adjustment, or other documentation or benefit by . . . willfully misrepresenting a material fact, to wit asylum and lawful permanent residence in the United States." *See* J.A. 1301,

3

1294.[1]  Notwithstanding that major concession and his other false statements in connection with his asylum application, Singh now relies primarily on a single out-of-circuit decision to argue that his series of misrepresentations were not actually material, because he was then and there otherwise eligible for asylum based on his fear of being persecuted in India for his Sikh religion.

In the Sixth Circuit's decision in *Yousif v. Lynch*, 796 F.3d 622 (6th Cir. 2015), petitioner Yousif's asylum application contained fabricated statements regarding specific instances of torture.  The application, however, was founded on Yousif's perilous religious status as a Chaldean Christian in Iraq.  *Id*. at 626-27.  And there was no dispute at the time of Yousif's petition that his status would have subjected him to religious persecution if he was returned to Iraq.  *Id*. at 628.  As a result, the court of appeals directed a remand to the BIA for further consideration of whether Yousif was eligible for asylum based on his status as a Chaldean Christian alone — that is, whether the then-current conditions in Iraq had also existed when Yousif filed his asylum application several years earlier.  *Id*. at 636.

In addition to being non-binding on our Court, the *Yousif* decision is otherwise inapplicable here.  As explained above, Singh's asylum application was predicated on falsely manufactured events about his brother's torture and disappearance, along with an invented accounting of Singh's own arrest, torture, and political activities.  Excising these false statements, Singh's asylum application offered no additional information concerning

---

[1] Citations to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

4

conditions in India for Sikhs at the time of his asylum application, or that confirmed Singh's fear of practicing his religion in India. Because the plain import of Singh's asylum application was his fear of past persecution relating to his and his family's now-admittedly falsified political activities, his series of fabrications were critically influential to the asylum application decisionmaker. *See Kungys v. United States*, 485 U.S. 759, 770 (1988) (establishing in an immigration context that a "concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed" (citation modified)).

In these circumstances, we cannot say that either the IJ or the BIA erred in determining that Singh had misrepresented material facts and filed a frivolous asylum application in 2000. His contention with respect to the frivolous asylum ruling must therefore be denied.[2]

## B.

Turning to Singh's second challenge, he contests the BIA's denial of his motion to remand this matter to the IJ. By a remand, he sought to pursue alternative relief by a withholding of removal and protection under the CAT. And as we know, the BIA's denial of a remand motion is accorded deference, in that "we are bound to uphold the BIA's determinations unless they are manifestly contrary to the law and an abuse of discretion."

---

[2] Singh has also argued that the underlying rulings of the IJ and the BIA were flawed because they both assumed that they lacked the discretion to withhold a frivolous asylum finding. That contention, however, is directly contradicted by the record. The IJ concluded (and the BIA affirmed) that the IJ would decline to exercise favorable discretion due to the nature and extent of Singh's dishonesty. *See* J.A. 198 (IJ decision); *id.* at 4 (BIA decision).

*See Kouyate v. Garland*, 122 F.4th 132, 140 (4th Cir. 2024) (citation modified).  The BIA abuses its discretion when it fails to offer a reasoned explanation for its decision or when it distorts important aspects of an applicant's claim.  *See McDougall v. Bondi*, 150 F.4th 637, 641 (4th Cir. 2025).

To pursue a withholding from removal, Singh was obliged to make a prima facie showing to the BIA of a "clear probability that his life or freedom would be threatened" in India due to his "race, religion, nationality, membership in a particular social group, or political opinion."  *See Salgado-Sosa v. Sessions*, 882 F.3d 451, 455 (4th Cir. 2018) (quoting 8 U.S.C. § 1231(b)(3)(A)) (citation modified).  Similarly, to be eligible for CAT relief, Singh bore the burden of making a prima facie showing that it is "more likely than not that" he "would be tortured with the consent or acquiescence of the government," if removed to India.  *See Funez-Ortiz v. McHenry*, 127 F.4th 498, 503 (4th Cir. 2025) (citing 8 C.F.R. § 1208.16(c)(2)) (citation modified).

In an effort to satisfy his burden, Singh argues that he would yet be subject to persecution and torture in India, in that he practices his Sikh religion and has consistently attended a place of worship in this Country that supports India's separatist pro-Khalistan movement.  In ruling against Singh, the BIA determined that he had failed to make a sufficient showing that he is prima facie eligible for either a withholding of removal or for CAT relief, insofar as his evidence consisted only of documents relating to general country conditions in India that may impact certain separatist Sikhs.

Put simply, the BIA did not abuse its discretion in denying Singh's motion for a remand.  That ruling was predicated on a lack of individualized probability of harm, in that

6

it is clear Singh failed to submit sufficient evidence to establish a likelihood that he would be tortured with the consent or acquiescence of the Indian government, or that his life or freedom would be threatened if returned to India, because he is a Sikh. *See Herrera-Martinez v. Garland*, 22 F.4th 173, 187 (4th Cir. 2022) (recognizing that generalized reports of violence are insufficient to show that government would torture petitioner).[3]

## II.

Pursuant to the foregoing, we are satisfied that the IJ and the BIA each correctly resolved the issues before them, and that Singh's petition for review must be denied.

*PETITION FOR REVIEW DENIED*

---

[3] Finally, we observe that Singh has failed to establish that he is similarly situated to the separatist Sikhs identified in his evidence, or that the torture of pro-Khalistan Sikhs is widespread in India. Indeed, most of the evidence Singh presented is inapplicable in these proceedings. *See* J.A. 55-60, 66-68 (showing that the Indian government targeted Sikh farmers and passed since-repealed discriminatory farm laws); *id.* at 80 (indicating that Indian government has tolerated violence, which has primarily impacted Muslim populations); *id.* at 120-25, 136-38 (reporting Indian government action with respect to Sikhs outside India who are members of specific political activist group).